681 So.2d 401 (1996)
Kenneth E. FORD, et al.
v.
MURPHY OIL U.S.A., et al.
No. 94-CA-1218.
Court of Appeal of Louisiana, Fourth Circuit.
August 28, 1996.
Rehearing Denied November 6, 1996.
*403 Sidney D. Torres, III, Roberta L. Burns, Law Offices of Sidney D. Torres, III, Chalmette, and Eldon E. Fallon, Gerald E. Meunier, Nick F. Noriea, Jr., Andrew A. Lemmon, Gainsburgh, Benjamin, Fallon, David & Ates, and Jerald N. Andry, Jr., Gilbert V. Andry, III, Andry & Andry, New Orleans, for Plaintiffs/Appellants.
Robert E. Couhig, Jr., Mark S. Embree, Gayle T. Croxton, Adams & Reese, New Orleans, for Defendants/Appellees, Chemcat Corporation, Lloyd Whittington and Frenchy Cheramie.
Sam A. LeBlanc, III, Paul G. Pastorek, Glen M. Pilie, Karen L. Lewis, William J. Kelly, III, Adams & Reese, New Orleans, for Defendants/Appellants, Mobil Corporation and R.V. Pisarczyk.
Hal C. Welch, Gerald J. Talbot, Lemle & Kelleher, L.L.P., New Orleans, and George A. Frilot, III, James F. Shuey, Kenneth A. Mayeaux, Frilot, Partridge, Kohnke & Clements, New Orleans, and James E. Baine, El Dorado, Arkansas, for Defendant/Appellant, Murphy Oil U.S.A., Inc.
Walter C. Thompson, Jr., Mark P. Seyler, Barkley & Thompson, New Orleans, for Defendant/Appellee, Calciner Industries, Inc.
Before SCHOTT, C.J., ARMSTRONG, JONES, WALTZER and MURRAY, JJ.
MURRAY, Judge.
Murphy Oil USA, Inc. (Murphy) and Mobil Oil Corporation (Mobil) appeal the trial court's certification of a class action for the claims of residents of St. Bernard and Orleans Parishes who are alleging causes of action against them pursuant to Civil Code articles 667 through 669, 2315 and 2315.1. The twenty-six named class representatives[1] (plaintiffs) appeal the trial court's denial of certification of a class action as to their claims against ChemCat Corporation (ChemCat) and Calciner Industries, Inc. (Calciner).
On June 25, 1990, plaintiffs[2] filed a "Class Action Petition for Damages" against Mobil, Murphy, Calciner, and ChemCat, as well as various employees of each, alleging that the defendants had breached the duty imposed by the legal servitude of vicinage. The case was removed to federal court by Mobil and Murphy on June 27, 1990, on the basis of diversity and federal question jurisdiction. It was remanded on October 22, 1990. Murphy and its employees filed exceptions of lis pendens, improper cumulation of actions, improper joinder of plaintiffs and defendants, and improper use of class action procedure. The other defendants answered, filing general denials. All defendants objected to the use of the class action procedure.
Defendants filed a Joint Motion for Case Management Order. The district court held a status conference to discuss all aspects of the certification issue. Thereafter, the court held bi-weekly status conferences, which were suspended at some point but later resumed. On December 20, 1990, plaintiffs moved for certification of a class action. In response to discovery motion practice the court entered an order delineating the questions that would be propounded to the proposed class representatives and setting deadlines for plaintiffs to respond to pre-certification discovery. The court subsequently expanded the scope of pre-certification discovery to include interrogatories and depositions, but limited discovery to "the litigants and the experts and any support documents for certification purposes." This order, entered on May 7, 1991, provided that "this discovery process is to focus on the issue of common character, the geographic area *404 question, and to a lesser extent numerosity." The certification motion was submitted on briefs and taken under advisement on February 26, 1993. Exhibits introduced in connection with the motion included depositions of the class representatives and experts, affidavits of fact witnesses, various maps, and an air impact study.
On April 19, 1994, the trial court entered Judgment and Reasons for Judgment. The court denied certification of a class against ChemCat and Calciner finding that the requirements of common character and numerosity had not been met as to these two defendants. The court, however, granted certification of a class action against Mobil and Murphy, finding that all requirements for a class action had been met as to these two defendants. The court also ruled that the class would be divided into two subclasses with the geographic perimeters to be determined later.
Murphy and Mobil appealed the certification of the class as to them, asserting that plaintiffs had not satisfied the "common character" requirement necessary for a class action. They have also assigned as error the trial court's determination that the class should be subdivided without defining the geographic boundaries of the class or subclass. Plaintiffs appealed the denial of certification as to ChemCat and Calciner, contending that the trial court erred when it denied certification as to all defendants, effectively rejecting plaintiffs' theory of tort liability.

CLASS ACTIONS GENERALLY:
Class action procedure is designed to permit the institution and management of litigation involving a right of common character vested in a sufficient number of parties as to render their joinder impracticable in an ordinary proceeding. Louisiana class actions are governed by articles 591 through 597 of the Code of Civil Procedure.
The purpose and intent of class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to the representatives who bring the action but to all others who are "similarly situated," provided they are given adequate notice of the pending class action and do not timely exercise the option of exclusion from the class action. La.Code Civ.Proc.Ann. art. 597; Williams v. State, 350 So.2d 131, 137-38 (La.1977).
A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is common to all members of the class. La. Code Civ.Proc.Ann. art. 591. Article 591 was adapted from the original federal class action, which recognized "true", "hybrid", and "spurious" class actions. However, the Louisiana legislature rejected the "hybrid" and "spurious" class actions so that Louisiana law recognizes only the "true" class action. Consequently, Louisiana courts have required that there be a relationship between the claims of the purported class members greater than simply a sharing of a common question of law or fact. Stevens v. Board of Trustees of Police Pension Fund, 309 So.2d 144, 150 (La.1975). This has been interpreted to require that questions of law or fact common to the class members predominate over any questions affecting only individual members, and that the class action be superior to other available methods for the fair and efficient adjudication of the controversy. State ex rel. Guste v. General Motors Corp., 370 So.2d 477, 489 (La.1978). As Justice Tate noted in Stevens, this limits the use of the class action procedural device "to occasions where the class action will be clearly more useful than other available procedures for definitive determination of a common-based right, if such definitive determination in the single proceedings should be afforded in the interests of the parties (including both the class and the opponent(s) to it) and of the efficient operation of the judicial system." Stevens, 309 So.2d at 151.
When the issue of class certification is raised, the court may require some showing beyond the pleadings. The proponents of certification may present appropriate proof of numerosity, common character, and adequate representation. Stevens, 309 So.2d at 152-53.
*405 The sole consideration for the trial court in ruling on certification, and for this court in reviewing that ruling, is whether the case at bar is one in which the procedural device of a class action is appropriate. In determining the propriety of a class action the court is not concerned with whether the plaintiffs have stated a cause of action or the likelihood that they ultimately will prevail on the merits. See Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); Miller v. Mackey International, Inc., 452 F.2d 424 (5th Cir.1971). Article 593.1(A) of the Code of Civil Procedure provides for recall, alteration or amendment of a preliminary order of class certification. Because of this flexibility, trial courts are encouraged to favor class certification in the preliminary stage. McCastle v. Rollins Environmental Services of La., Inc., 456 So.2d 612, 620 (La.1984).
A class action is nothing more than a procedural mechanism designed to efficiently and economically manage large numbers of claims in which common issues predominate over individual issues. Stevens, 309 So.2d at 151. Class certification is not an adjudication on the merits. General Motors Corp., 370 So.2d at 489. Plaintiffs who successfully demonstrate that their claims satisfy the statutory prerequisites for maintaining a class action have done nothing more than establish that they may utilize this procedural device. The road from certification to a favorable judgment is long and arduous, with many pitfalls along the way. If the plaintiffs are unable to surmount the hurdles along that road, the defendants will dispose of a large number of claims at one time. La. Code Civ.Proc.Ann. art. 597.

CLASS CERTIFICATION:
In paragraph 23 of their original petition, plaintiffs have specified eight particular acts by which each of the four corporate defendants, and certain of their respective employees, have caused injury to the petitioners.[3] Additionally, in paragraph 24 it is alleged that "[t]he individual and/or combined activities of the defendants" caused or contributed to a situation by virtue of a "synergistic accumulation or combination of releases, emissions, disbursements, placement, seepage, drainage, migration or otherwise nonconsensual placing of pollutants on the exclusive properties or persons of the petitioners" that deprived them of the use of their property in violation of the "vicinage" articles of the Civil Code.[4]
Plaintiffs bore the burden of proving that they satisfied each of the prerequisites of class certification. The basic requirements for a class action are:
1. A class so numerous that joinder is impracticable, and
2. The joinder as parties to the suit one or more persons who are
(a) members of the class, and
(b) so situated as to provide adequate representation for absent members of the class, and
3. A common character among the rights of the representatives of the class and the absent members of the class.

McCastle, 456 So.2d at 616.
In this appeal, which focuses on the requirement of common character, the parties seem to agree on one thing: by certifying a class as to Murphy and Mobil but refusing certification as to ChemCat and Calciner, the court implicitly rejected the plaintiffs' "synergy" theory of liability.
Of course, each side argues that this implicit rejection supports its position in this appeal. Plaintiffs argue that because they have asserted claims for the "synergistic" effect of the combined activities of the four corporate defendants, the court had to certify a class as to all defendants. On the other hand, the defendants argue that a class action should not be maintained where there may be more than one source for the alleged cause of harm to the plaintiffs.
*406 Following these arguments to their logical extreme highlights the fallacy of each. Adopting plaintiffs' position arguably would allow everyone in Louisiana who claims to be injured by industrial pollution to be joined in a single class action with multiple subclasses, essentially certifying separate class actions as a single class action with subclasses. However, were we to adopt the position advanced by the defendants no class could ever be certified for claims of plaintiffs in a large geographical area who are alleging adverse effects of environmental pollution contributed to by a number of different sources. Neither position is correct. Each, in its own way, is a distortion of the law that undermines the effectiveness of this very important procedural tool.
In this case, people in a certain geographic area encompassing St. Bernard Parish and portions of Orleans Parish have alleged that they were affected adversely by pollution emanating from a number of sources. In order for these plaintiffs' claims to be joined in a class action, common issues must predominate over individual issues. To satisfy that common character requirement in the context of this case, all of the plaintiffs who sought to be joined in the class would have to have been affected by the activities of at least one of the defendants, although they also may have been affected by emissions from other sources. The trial court found that all plaintiffs had demonstrated a likelihood that they were affected by the activities of Mobil and Murphy, so that there was a common character as to the plaintiffs' claims against those two defendants. The court found, however, that the plaintiffs had not borne their burden of showing that the prerequisites of numerosity and common character had been proven as to ChemCat and Calciner.

DENIAL OF CERTIFICATION AS TO CHEMCAT AND CALCINER:
A trial court is given great discretion in certifying a class action. As this court has noted, "Wide latitude must be given the trial court in considerations involving policy matters and requiring an analysis of the facts under guidelines helpful to a determination of the appropriateness of a class action." Atkins v. Harcross Chemicals, Inc., 93-1904, pp. 5-6 (La.App. 4th Cir. 5/17/94), 638 So.2d 302, 306, writs denied, 94-2158, 94-2161 (La. 11/11/94), 644 So.2d 396. Absent manifest error, a trial court's determination on class certification will not be disturbed. Ellis v. Georgia-Pacific Corp., 550 So.2d 1310, 1313 (La.App. 1st Cir.1989), writ denied, 559 So.2d 121 (La.1990).
The trial court denied certification as to ChemCat and Calciner based on its reading of the depositions of the class representatives. Those depositions established that few of these claimants had complaints relating to these defendants. In fact, several had no complaints as to ChemCat or Calciner. We cannot say that the court abused its discretion when it found that the plaintiffs had failed to carry their burden to demonstrate that the class action was a superior procedural device as to the claims against ChemCat and Calciner.

CERTIFICATION AS TO MOBIL AND MURPHY:
In certifying a class against Mobil and Murphy, the district court found that all of the statutory prerequisites for maintaining a class action had been met as to the claims against each, noting that the claims of the class representatives reflected a "correlation to their proximity to Mobil and Murphy." The district court found that the claims against Mobil and Murphy were so numerous that joinder would be impracticable making it judicially efficient to proceed as a class action.[5] The court also found that, in addition to there being common issues of fact and law, the common issues of causation and duty predominated over individual issues of damages so that the common character requirement was satisfied. Finally, the court found that the proposed class representatives *407 would provide adequate representation of the interests of the class.
The claims asserted in this class action include physical and emotional injury, fear of future illness, increased risk of future illness, inconvenience, disruption of personal and professional lives, diminished general quality of life, clean-up costs, property damage, loss of use and enjoyment of property, diminished property values, loss of earnings, loss of profits and business interruption loss. Not every plaintiff is alleging every type of injury, but all plaintiffs claim that Murphy and Mobil conducted activities on their premises that unreasonably inconvenienced and injured members of the class, for which the defendants allegedly are strictly liable.
Murphy and Mobil argue that the trial court was wrong when it determined that common issues of fact and law predominated. We disagree. We find that this case presents a situation similar to that presented in McCastle, supra.
In McCastle the plaintiffs alleged that on numerous occasions over a period of approximately one year, the ongoing operations at a Rollins' waste disposal facility produced nauseating chemical fumes causing illness, discomfort and increased risk of disease. Approximately 400 people who lived in a community near the facility sought monetary damages and injunctive relief, establishing by testimony that the fumes were present on numerous occasions and that the location and density of the fumes sometimes depended on wind conditions. Considering these variables, the court found sufficient common character existed, noting that this requirement restricts the class action to those cases in which it would "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." McCastle, 456 So.2d at 616.
As in McCastle,[6] the single most important issue to be determined in this litigation is whether the defendants' activities at their facilities deprived their neighbors of the liberty of enjoying their own land or caused unreasonable inconvenience or damage. Offering the same facts, all class members will attempt to establish that the activities of Mobil and Murphy emitted hazardous, toxic, corrosive, or noxious odors, fumes, gases or particulate matter that caused them damage. The issue of these defendants' duty predominates over individual questions. The differences noted by the defendants generally concern the proof of damages and causation. The pleadings and evidence presented in connection with certification suggest that with respect to the predominant liability issues, there will be no material deviations because individual defenses such as contributory negligence and assumption of the risk are wholly inapplicable. McCastle, 456 So.2d at 620.
Defendants attempt to distinguish McCastle because this case involves separate facilities, whose history of operations span greatly different time frames and involve widely varying materials. That argument was rejected in Atkins, supra, where this court upheld the lower court's certification of a class of individuals living within three blocks of a warehouse that was the site of a pesticide manufacturing plant from 1941 until 1977. Despite this lengthy time span, this court concluded that the common issues predominated over individual ones. Those common issues included whether or not the substances produced and/or stored at the facility were toxic; whether or not such toxins were released or escaped and if so when and in what amounts; whether or not those toxins were of a sufficient concentration to endanger human health within the geographic area of the release; whether the defendants had a legal duty to anticipate and take steps to prevent the risk; and whether or not punitive damages were applicable. Atkins at p. 5, 638 So.2d at 305. We find the issues presented here are virtually identical to those identified in Atkins.
Similarly, the defendants' argument that a class cannot be maintained here because other sources of pollutants may have contributed *408 to plaintiffs' alleged problems has been rejected. In Ellis, 550 So.2d at 1315, a case involving the allegedly unauthorized discharge of phenol into the river by the defendant, the court found that "the claim that others dumped phenol and that different water treatment plants may have aggravated the problem are common defenses asserted by Georgia-Pacific, not defenses against individual plaintiffs." See also Millet v. Rollins Environmental Services of La., Inc., 428 So.2d 1075, 1078 (La.App. 1st Cir.), writ denied, 433 So.2d 153 (La.1983).
This case, like the McCastle, Atkins, Millet, and Ellis cases, concerns an environmental hazard that allegedly harmed and caused inconvenience to nearby residents. The differences between the claims in this case are similar to the differences in those cases. We find, as did the court in Ellis, that the fact that individuals may have been injured or unreasonably inconvenienced on varying dates by the defendants' operations does not constitute a material variation in the elements of the class members' claims. The issue of the defendants' duty and possible liability predominate over the individual issues raised by the defendants. Ellis, 550 So.2d at 1317 (citing McCastle, 456 So.2d at 620); accord Saden v. Kirby, 532 So.2d 108 (La.1988) (Supreme Court reversed denial of certification in suit by residents against Parish, Department of Transportation and Development, and Sewerage and Water Board to recover damages caused by severe flooding after construction of a levee where appeal court had upheld denial based on its determination that varied damage claims and multiplicity of available defenses precluded certification).
We recognize that there will be some difficulty in managing this litigation, but we find that this does not outweigh the economies to be derived from a unitary adjudication. As in McCastle virtually all of the witnesses and class members live in the same vicinity. This, coupled with the identity of the main issue of liability in all claims, will facilitate a prompt, efficient, relatively inexpensive single trial on the common issues. A class action will allow the court the flexibility to manage this claim in the most efficient manner possible. There can be little doubt that a class action is the superior procedural vehicle to adjudicate these claims. We find that maintaining a class action in this case promotes the implementation of the substantive law in a manner that will provide maximum fairness to all parties with a minimum expenditure of judicial resources, which is the basic goal of any procedural device. Stevens, 309 So.2d at 151. As the First Circuit has noted, "Of what value is a device denominated `class action' if it is unavailable in the very situation where its peculiar procedural features are so eminently suitable to the expeditious and economical use of the overburdened judicial machinery and to providing a judicial forum to persons to whom such an opportunity might otherwise be denied?" Livingston Parish Police Jury v. Illinois Cent. Gulf R. Co., 432 So.2d 1027, 1034 (La.App. 1st Cir.), writ denied, 437 So.2d 1137 (La.1983).
In summary, we find no abuse of the trial court's discretion in certifying a class as to the claims against Mobil and Murphy.

THE CLASS DEFINITION:
Although the trial court certified a class action as to Mobil and Murphy, it noted that a division into two subclasses was warranted but did not define the geographical area of the class and each subclass. Mobil and Murphy assert that certifying a class without first determining the geographic perimeters was error because the court could not have determined numerosity, commonality or the adequacy of the class representatives without considering the limits of the area involved.
A class definition provides the framework against which the court can apply the statutory requirements in order to determine whether a class action may be maintained. The definition of the class in the petition should provide a sufficient basis upon which to determine the scope of the class and the propriety of permitting plaintiffs to represent all or a part of it. 2 H. Newburg, Class Actions, § 6.14 (3d ed. 1992). The requirement that there be a class capable of definition ensures that the proposed class is not amorphous, vague or indeterminate. See In re Tetracycline Cases, 107 F.R.D. 719 *409 (W.D.Mo.1985). A person should be able to determine readily if he or she is a member of the class. This is essential in order for there to be res judicata effect to any judgment that is rendered. We find, therefore, that the trial court should have defined the geographic perimeters of the class.
Plaintiffs have proposed that the class be defined as:
Residents, property owners, and business owners in the St. Bernard Parish communities of Arabi, Chalmette, and Meraux, extending eastward to the Violet Canal, and that portion of Algiers directly across the Mississippi River bounded to the West by Holiday Drive, to the South by General De Gaulle, and to the East by the Algiers Canal, whose claims are based upon defendants' alleged violation of articles 667-669 and 2315 et. seq., La.C.C., which violations allegedly caused such harm to their neighbors, and who allege personal injury or property damage caused by the emission of hazardous, toxic, corrosive, or noxious odors, fumes, gases, or particulate matter from any or all of the four defendants' facilities, and which emissions cause such damages either in their original form or in combination with each other or other ambient compounds.[7]
However, we have found that the trial court correctly refused to certify a class as to the claims against ChemCat and Calciner. Therefore, based on our review of the record, the class is defined as follows:
Those residents, property owners, and business owners in the St. Bernard Parish communities of Arabi, Chalmette, and Meraux, extending eastward to the Violet Canal, and that portion of Algiers directly across the Mississippi River bounded to the west by Holiday Drive, to the south by General deGaulle, and to the east by the Algiers Canal, who allege that they have sustained personal injury or property damage caused by the emission of hazardous, toxic, corrosive, or noxious odors, fumes, gases, or particulate matter as a result of the violation of Articles 667-669, 2315 and 2315.1 of the Louisiana Civil Code by Murphy Oil USA, Inc. and Mobil Oil Corporation.
We leave it to the trial court to determine how the class shall be subdivided as the case develops. Any subdivision(s) may be based upon geographical subgroupings, subgroupings by type of injury alleged, exposure, and other factors as may become apparent as a case management order is formulated, and the litigation progresses.
For the reasons assigned, the judgment of the trial court denying certification of a class action against ChemCat and Calciner is affirmed. The judgment maintaining a class action against Mobil and Murphy is amended to include the class definition set forth above. This case is remanded to the trial court for further proceedings, with each party to bear its own costs of this appeal.
AMENDED AND AFFIRMED AS AMENDED.
SCHOTT, C.J., dissents.
WALTZER, J., Dissents in Part and Concurs in Part with Reasons.
SCHOTT, Chief Judge, dissenting:
In affirming the trial court's certification of the class action against Murphy and Mobil the majority fails to address the procedural points raised by these appellants. These concern the trial court's arbitrary limitation on discovery proposed by appellants, its failure to conduct a proper evidentiary hearing, allowing instead a trial by affidavit, and its failure to make the proper preliminary determination as to the qualifications of expert witnesses. Appellants are entitled to a proper hearing on the question of certification before being required to proceed with a trial on the merits.
*410 In any event, I respectfully submit that my colleagues in the majority have committed grave error by refusing to permit the plaintiffs to pursue the theory and the cause of action they have selected, by converting their case into one the plaintiffs did not plead in the trial court or in this court, and requiring the appellants to defend against a case not presented to the trial court.
Plaintiffs alleged that the four defendants operate industrial plants in St. Bernard Parish from which they discharge all sorts of pollutants and these combine to produce a synergism which is worse for the environment than the sum of their individual effects. They allege that this synergism is the cause of all sorts of illnesses, property damage, and inconvenience for all the residents of St. Bernard Parish and the west bank of Orleans Parish. Plaintiffs have never asserted that Murphy alone caused damage to a certain class or group of these residents or that Mobil did.
Plaintiffs based their claim on LSA-C.C. arts. 667-669. These articles constitute the law of nuisance regulating the use of one's property with respect to the rights of one's neighbor. While a person may use his property as he pleases, he may not do something which deprives his neighbor of enjoying his own property or which causes damage to the neighbor. LSA-C.C. art. 667. On the other hand, he may conduct activities even though they occasion some inconvenience to the neighbor. LSA-C.C. art. 668. In the case of a "manufactory or other operation" which causes inconvenience to neighbors "by diffusing smoke or nauseous smell", regulation is determined by local police power or custom. LSA-C.C. art. 669.
In O'Neal v. Southern Carbon Co., 216 La. 96, 43 So.2d 230 (1949), the court was confronted with a nuisance action brought under the aforesaid articles in which plaintiffs alleged damage to their property from carbon emissions from defendant's plant. However, the record established that there were four other sources of pollution. The court held that plaintiffs' cause of action under arts. 667 and 668 against defendants was properly dismissed because they failed to establish that their damage and inconvenience resulted from the operations of this particular defendant.
In the present case the plaintiffs insist that their cause of action requires all four defendants to be accountable since they each contributed to the synergism about which they complain. To that end they have appealed from that portion of the judgment as to Chemcat and Calciner.
Synergism requires participation by more than one actor. By definition it is the result of the actions of more than one actor and is worse in its combined state than would be the sum of the individual results. An action based upon LSA-C.C. arts. 667 and 668 is precluded unless plaintiffs establish that their damage and inconvenience resulted from the action of a particular neighbor. O'Neal, supra. The inconsistency is clear. Synergism cannot be produced by one actor and an art. 667 or 668 action cannot be maintained against more than one.
The trial court apparently realized that plaintiffs were precluded from proceeding with the theory and the cause of action they asserted, but instead of dismissing their case the court simply converted their case to one consisting of a class of plaintiffs who can assert claims against Murphy and another class who can assert claims against Mobil. Furthermore, the court apparently realized that a successful nuisance action by each class against each plant required some geographical proximity in each case. The court solved this problem simply by deferring a determination of the geographic limits for each class until some later date during the course of the litigation.
This was disingenuous. It was an attempt to provide plaintiffs with a claim they were not asserting. As a result, the plaintiffs took an appeal from that judgment and have argued in this court that their intention to prove damages from synergism produced by the four defendants was frustrated by the judgment.
My colleagues in the majority simply dismiss plaintiffs' theory as fallacious and "a distortion of the law, which would undermine the effectiveness of [the class action procedure]" because "no class [like the one sought *411 by plaintiffs] could ever be certified." Consequently, my colleagues, like the trial court, simply ignore the class and the cause of action or theory of the case asserted and championed by plaintiffs and they give plaintiffs another, different case which they hold would be suitable for a class action.
In holding that the trial court's certification of a class action against Murphy and Mobil was a legitimate exercise of discretion my colleagues enumerate a string of different losses and injuries asserted by plaintiffs and they conclude with this statement: "Not every plaintiff is alleging every type of injury, but all plaintiffs claim that Murphy and Mobil conducted activities on their premises that unreasonably inconvenienced and injured members of the class, for which the defendants allegedly are strictly liable." That is not what plaintiffs claim at all. They claim that all of these damages resulted from the synergism created by the four defendants, not that some damages were caused by Murphy and some by Mobil. If the plaintiffs have failed to prove entitlement to a class action for the claims they have asserted or if the class they seek is not supportable as a matter of law their petition should be dismissed. The court of appeal should not create a new theory or a new case from the evidence in the record in order to maintain plaintiffs' suit. In effect, the majority is forcing plaintiffs to proceed with a case which they have never asserted and which they may realize cannot be proved or may have no basis in law.
The majority's discussion of commonality is flawed by its rejection of plaintiffs' chosen theory of synergism and its substitution of a different theory for plaintiffs to pursue.
Plaintiffs' claim of synergistic accumulation is their only basis for meeting the commonality requirement. They contend that emissions from the four defendant facilities combine and increase the amount of airborne pollutants which affect the class members. They have not attempted to distinguish among the four separate facilities, but rather to show the impact of the four facilities' emissions as a whole. Not only does the record fail to establish that any one defendant's emissions react with those of any other defendant, it does not distinguish among the separate emissions of the four facilities.
One expert called by plaintiff did not find that each person in a defined geographic area was affected by the emissions of any facility, much less that every person was affected by all four facilities. The expert merely opined that theoretically under certain conditions, the effects of chemicals in the air may be increased. Another plaintiffs' expert testified that there are periods when one or more facilities would be contributing nothing to the emissions' concentrations.
The claims of the class representatives are the claims of the twenty-two named plaintiffs. There are no common issues which predominate over individual issues; there are no issues to be adjudicated on a class-wide basis. One plaintiff cannot prove individual causation and individual damage based on the exposure of another plaintiff to a particular emission.
The causative link between defendant's conduct and plaintiffs' damages must be the same for all plaintiffs. The only issue that should vary is the extent of damages for each individual member of the class. Brown v. New Orleans Public Service, Inc., 506 So.2d 621 (La.App. 4th Cir.1987), writ den. 508 So.2d 67 (La.1987). This case does not present this situation. The claims do not stem from consistent operations or identical emissions over the same period of time, but from unrelated, distinct operations of four different facilities. The record shows that many questions when answered as to one class member are not answered as to all members and that the merits of each claim will turn on the particular facts and circumstances involved.
The majority's reliance on the McCastle and Atkins cases is misplaced. These were each claims by members of a class composed of neighbors of a single plant for damages from operations at that plant. Likewise, the Ellis case is inapposite in that the defendant was merely asserting that its dumping of phenol was aggravated by the operations of others which the court considered as a common defense against all the members of the class. In the present case plaintiffs are not *412 asserting that any defendant alone caused damages, but rather that the sum total of all their activities did.
At the conclusion of the majority opinion the class is defined as various residents of St. Bernard and westside Orleans Parish who have sustained damages as a result of the activities of Murphy and Mobil. It is significant that this definition was fashioned after the plaintiffs had submitted their definition of the class as those who sustained damage from the activities of all four defendants. Thus, the majority is forcing plaintiffs to represent a class unlike the one they seek to represent.
The class definition provided by the majority clearly contemplates a combination of activities engaged in by Murphy and Mobil which is clearly repulsive to the theory of strict liability based upon arts. 667-669. Apparently in recognition of the difficulty of this position the majority allows the trial court unlimited discretion to make so many subgroups based upon so many different factors that what purports to be a class action would actually be a hodgepodge of splinter groups whose diverse claims are consolidated in a single proceeding. This is clearly inimical to the notion of a class action.
Finally, I respectfully submit that the reference to arts. 2315 and 2315.1 in the definition of the class is without any basis. Plaintiffs' case is not based upon negligence, but on strict liability or the law of nuisance. The record clearly shows that the activities of the defendants which allegedly pollute the areas in question are perfectly lawful and are being conducted in total compliance with the rules and regulations of various governmental agencies which closely monitor their activities.
I would reverse the judgment of the trial court and dismiss plaintiffs' suit.
WALTZER, Judge, dissenting in Part and Concurring in Part with Reasons:

STATEMENT OF THE CASE
Plaintiffs seeks to bring a class action on behalf of themselves and residents of the Parish of St. Bernard whose property is located within various degrees of proximity of four petro-chemical plants. The plants are not interrelated, and are located from tenths of a mile to several miles apart. Plaintiffs claim damages ranging from fear of life-threatening disease to minor inconvenience resulting from an alleged synergistic effect among the emissions from the four plants. It is undisputed that the plants meet or exceed all regulations of the Louisiana Department of Environmental quality and of the federal Clean Air Act.
The judgment of the district court purports to certify, but not to define, a class action against the two larger plants, operated by Mobil and Murphy Oil, and announces its intention to create two sub-classes to be based on a to-be-determined geographical proximity to the two plants. The trial court apparently recognized that the claims were not common throughout all class members in the Parish, and, rather than denying certification of the improper class (which lacked commonality), it broke the class down geographically, a procedure for which I have been unable to find statutory authority.
The record indicates that there are three bases for dismissal of the class action claim:
(1) the requirements for class certification have not been met because:
a) representative plaintiffs' claims do not share the requisite commonality with those of other representative plaintiffs and with the absent plaintiffs;
b) certification will not promote fairness;
c) certification will not promote judicial efficiency;
d) certification will not effectuate legislative policy;
e) plaintiffs have not proved the existence of an identifiable class;
f) plaintiffs have not demonstrated they will adequately represent the interests of absent plaintiffs;
(2) plaintiffs failed to sustain their burden of proof by introduction of admissible, competent evidence;
(3) under either strict liability or negligence theories, plaintiffs have failed to state a claim.

*413 SCOPE OF REVIEW

In Adams v. CSX Railroads, 615 So.2d 476 (La.App. 4 Cir.1993), this Court held:
The trial court is afforded great discretion in class action certification. Wide latitude must be given the trial court in considerations involving policy matters and requiring an analysis of the facts under guidelines helpful to a determination of the appropriateness of a class action. absent manifest error, the decision of the trial court must be affirmed. Ellis v. Georgia-Pacific Corp., [550 So.2d 1310 (La.App. 1st Cir.1989), writ denied 559 So.2d 121 (La.1990)]....
A trial court has great discretion to certify a class. The court has wide latitude when considering policy matters and applying an analysis of the facts. The decision will not be overturned absent manifest error. Spitzfaden, 619 So.2d [795] at 798 [(La.App. 4 Cir.1993) ].

COMMONALITY
La.C.C.P. art. 591 provides:
A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is:
1. Common to all members of the class; or
2. Secondary, in the sense that the owner of a primary right refuses to enforce it, and a member of the class thereby becomes entitled to enforce the right.
The formula was patterned after the language which authorized the federal class action by the original version of Rule 23 (1937). However, the word "joint" in the federal rule was eliminated from the Louisiana adaptation since the phrase "common to all members of the class" includes the Louisiana joint right or obligation. Official Revision Comment (b) to Article 591. The Louisiana joint obligation is divisible rather than collective, so each joint obligee may recover only his proportional part of the obligation. Thus, the fact that different recoveries are sought based upon the same factual transaction and the same legal relationship, was not intended to defeat a Louisiana class action. Stevens v. Board of Trustees of Police Pension Fund of City of Shreveport, 309 So.2d 144, 149 (La. 1975).
Adams, supra, was a class action arising out of a chemical spill from a railroad car. This Court recognized the distinction between our class action and the federal procedure:
Not only is Louisiana class action procedure more flexible than Federal Rule 23, but it also encompasses most situations involving multiple claims arising from a single incident, assuming that the criteria for a class action are met. Adams, 615 So.2d at 480.
The Louisiana article eliminated the "spurious" and "hybrid" class actions from the federal class action formula, since Louisiana's more liberal joinder rules and intervention policy made these forms of class action unnecessary. Id. "In rejecting the hybrid and spurious class actions, our legislature intended that there be a relationship between the claims greater than simply that of sharing a common question of law or fact." Stevens, 309 So.2d at 150.
Under F.R.C.P. Rule 23, class actions are allowable when the class is so numerous that joinder is impracticable, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class. While, as noted above, Louisiana did not adopt Rule 23's hybrid and spurious class actions, the guidelines provided in revised Rule 23(b) to be applied in determining the propriety of implementing the class action procedure are useful in construing the Louisiana statute. These federal guidelines are:
1. the prosecution of separate actions by or against individual members of the class would create a risk of
a. inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible *414 standards of conduct for the party opposing the class, OR
b. adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability or protect their interests; OR
2. the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; OR
3. the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.
The matters pertinent to these findings under the federal rule include:
a. the interest of members of the class in individually controlling the prosecution or defense of separate actions;
b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
d. the difficulties likely to be encountered in the management of a class action.
The Stevens court found the revised Federal Rule 23 criteria for maintenance of the class action to be "indicative of the guidelines for ascertaining the occasions for maintaining class actions under our own code articles" Stevens, 309 So.2d at 150, but with the caveat that "in rejecting the hybrid and spurious class actions our legislature intended that there be a relationship between the claims greater than simply that of sharing a common question of law or fact." Id.
[E]xistence of a common question of law or fact does not by itself justify a class action, even though the parties be too numerous to be joined practicably and even though adequate representation is afforded by the typical member or members of the class who are parties to this suit. To this extent, the criteria of the revised Federal Rule 23 had been rejected by our legislature. Stevens, 309 So.2d at 151.
The court offered pragmatic guidelines to determine the commonality issue, limiting the use of the class action to occasions where it will be clearly more useful than other available procedures for definitive determination of a common based right:
[W]e are mindful of the basic goals or aims of any procedural device: to implement the substantive law, and to implement that law in a manner which will provide maximum fairness to all parties with a minimum expenditure of judicial effort. Implicit ... in decision that rights are of a common character is a consideration of the extent to which a clear legislative policy might be thwarted, or hampered in its implementation, by the lack of availability of the class action device. Id. (Emphasis added.)
This Court has held that variance in CAUSATION among purported class members will defeat the class action. In Brown v. New Orleans Public Service, Inc., 506 So.2d 621 (La.App. 4 Cir.1987), writ denied 508 So.2d 67 (La.1987), a suit for consequential damages caused during severe cold weather when NOPSI suffered a power outage, the Court held that because the element of causation, as well as the amount and type of damage varied as among the plaintiffs, individual legal and factual issues predominated. Each plaintiff would have to show whether his damages were caused by the cold weather alone or by the power outage or by both. The record indicated that many questions when answered as to one class member are not answered as to all. This variance among the causation claims of class members is evident in the Ford case, where the various plaintiffs claim their damages were caused in some cases by only one of the named defendants, and there is no clear showing that all purported class plaintiffs assert a claim against each defendant. Pragmatic management factors were also considered in Brown.
*415 In State ex rel. Guste v. General Motors Corp., 370 So.2d 477 (La.1978), the Attorney General brought a class action on behalf of GM automobile owners who were sold cars containing the engine of a different GM "marque." In sustaining the class action, the court referred to the Williams[1] and Stevens factors, and added that even where competing individual issues of law are raised in the pleadings, "these interjected issues are largely conjectural (that the plaintiffs were somehow aware of the engine substitutions), whereas the issue of the defendant's legal duty is obviously common to every case. A contrary holding would permit the defendant to defeat maintenance of a class action merely by alleging the existence of a possible defense against some class members but not against others." Guste, 370 So.2d at 489.
This is not the nature of the lack of commonality involved in Ford, wherein variance of causation among potential class members operates to defeat commonality.

FAIRNESS
In my view, the class also fails the fairness requirement:
Fairness ... demands at the least that the relationship between the claims of the members of the class should be examined to determine whether it would be unfair to [them] or to the party opposing the class, to permit separate adjudications. Stevens, 309 So.2d at 151.
In McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612 (La.1984), an air pollution case, the claims arose out of a release of chemical sludge fumes from hazardous waste disposal by means of land farming. The court found that on all of the dates in question, the land farm received similar hazardous waste from the same source and that the land farming operations were conducted consistently. Consequently, the court found a common nucleus of operative facts such as would justify allowing the class action to proceed.
Ford involves four defendants, differing operations and activities, different types of emissions, and widely varying complaints.
In making these determinations, the courts are required to consider the precedential value of the first decision, as well as the extent of injustice that will be produced by inconsistent judgments in separate actions and the relative sizes of the claims of absent class members. Here, defendants complain that the trial court did not allow them to take discovery from absent class members in order to present fully evidence relevant to the fairness issue. This trial court action was clearly erroneous under Justice Denis' analysis of class action certification methodology:
[T]he trial court must actively inquire into every aspect of the case and should not hesitate to require showings beyond the pleadings. McCastle v. Rollins Environmental Services of Louisiana, 456 So.2d 612, 618 (La.1984). [Citing Stevens, 309 So.2d at 152.]
In Williams v. State of Louisiana, 350 So.2d 131 (La.1977), 600 Angola inmates brought a class action for damages caused by tainted cafeteria food. In upholding the class action procedure, the court further discussed the pragmatic criteria set forth in Stevens:
The pragmatic criteria suggested by Stevens for the determination of the "common character" of the rights asserted for the class ... predominantly indicate that the class action is superior to other procedural methods available for the fair and efficient adjudication of the controversy, since the class action is otherwise appropriate because of the numerous members of the class and because of the adequate representation assured by the plaintiffs instituting this class action. Williams, 350 So.2d at 134-135.
The court analyzed the petition and found that six hundred separate suits would involve the danger of inconsistent determinations and of early separate adjudications that could have a prejudicial effect on subsequent separate cases. The court referred to the poverty and isolation of the prisoners and the small amount of each claim as factors posing a "serious threat to the loss of individual substantive rights if the class action is not allowed." Williams, 350 So.2d at 135. Unlike *416 the case at bar, the defenses were generally applicable to the entire class, and no special defenses were raised against only some of the plaintiffs. No competing individual issues of law were raised by plaintiffs' or defendants' pleadings.

EFFICIENCY
The Williams court also examined the following procedural factors in making its determination:
Because each plaintiff's recovery was small, and it would be difficult for the prisoners to obtain legal counsel, no substantial interest adverse to allowing a class action exists in favor of individual control of the actions;
Only ten individual suits had been filed, and the lower the number of additional suits, the more useful is the class action;
All claims were instituted in the same judicial district;
All witnesses and class members were in the same vicinity, and all claims involved the identical liability issue, so minimal difficulty would be encountered in assuring reasonable notice and in distributing any recovery. (Paraphrasing material at pages 135-136.)
According to plaintiffs' expert, Dr. Reible, the crucial question in air emissions cases is whether a concentration level can be established over a given area at a given time, since even wind alone (let alone sun and rain) will create variances in the dispersion of releases, and some concentrations can be found at distances quite remote from the source. The class device cannot be deemed efficient where, as here, the plaintiffs are widely dispersed geographically, and have not only critical distances among themselves, but also from the four dispersed plant locations. There is no focus point for which emission data can be obtained that will be applicable to the claims of all the class members. This fact makes the classes inappropriate for lack of commonality as well as lack of typicality and adequacy of representation.

ADVANCING/DISTORTING LEGISLATIVE POLICY
In the McCastle air pollution class action, the supreme court reversed dismissal of a class action brought on behalf of those injured by release of odors and fumes from a chemical waste disposal operator. Justice Dennis reiterated the Stevens, Williams and Guste standards, noting that in determining the issue of superiority of a class action,
"the trial court must inquire into the aspects of the case and decide whether the intertwined goals of effectuating substantive law, judicial efficiency, and individual fairness would be better served by some other procedural device.... [The court is] to determine to what extent the class action would in each instance promote or detract from the goals of effectuating substantive law, judicial efficiency, and individual fairness.... [T]he court must compare [this effectiveness] with its assessment of the effectiveness of other adjudicatory methods and decide whether the class action is the superior procedural device.... [T]he trial court must actively inquire into every aspect of the case and should not hesitate to require showings beyond the pleadings." McCastle, 456 So.2d at 617-618.
Justice Dennis then spoke of two principal ways in which class action generally effectuates substantive police:
They open courts to claims not ordinarily litigated, class actions enable courts to enforce policies underlying causes of action in circumstances where those policies might not otherwise be effectuated ... [and] they enable courts to see the full implications of recognizing rights or remedies, class action procedures assist courts in judging precisely what outcomes of litigation would best serve the policies underlying causes of action. Id.

The opinion also notes that if these plaintiffs' claims are not asserted in a class action, "it is evident that many will not be pursued, that the court may not see the true significance of claims or liability and that the court will therefore be unable to give full realization to the substantive legislative police. On the other hand, if all claims are successfully enforced in a class action, since recovery by the victims will be limited to the amount required to compensate them fairly, there is *417 little danger in this particular case that the legislative policy will be distorted by an exaggerated deterrent effect." McCastle, 456 So.2d at 619.
Certification in this case will distort the legislative policy inherent in the establishment of DEQ and the federal clean air act. All parties and experts agree that the four defendants have complied with all applicable emission standards.
Spitzfaden v. Dow Corning Corp., 619 So.2d 795 (La.App. 4 Cir.1993), writs denied 624 So.2d 1236, 1237 (La.1993) was a breast implant class action. There, this Court allowed the class action, holding:
Certification will not be denied because of individual questions of quantum when predominant liability issues are common to the class.... If the superiority of a class action is disputed, the trial court must decide whether the intertwined goals of effectuating substantial [sic] law, judicial efficiency and individual fairness would be better served by another procedural device. [Again, using the Stevens and Guste criteria.]
Plaintiffs contend in brief that the trial court held that plaintiffs had failed to meet their burden of proving that class action should be maintained against the two smaller plants "based on the amount, but not the character of admissions". This misstates the judgment, which provides: "The evidence shows that both the quality and quantity of emissions correlate to the relative size of each facility. As to [the smaller plants], the plaintiffs have not proven to the Court that a class action is appropriate."

DEFINITION OF CLASS
The trial court, by sub-classifying the potential class geographically implicitly rejects the synergy theory advanced by plaintiffs. Based on the record evidence, discussed more fully infra in the section concerning burden of proof, it cannot be said that the trial court was manifestly erroneous in finding that plaintiff has not proved the synergistic effect of the four unrelated plants.
The trial court's pretermitting definition of the class is also helpful in making the determination of the propriety of the class action. The trial judge apparently recognized that plaintiffs had not introduced sufficient evidence to determine the geographical extent of the class(es), so I must conclude that his determination that an identifiable class exists is manifestly erroneous. Plaintiff failed to prove there is an identifiable class after three years of discovery and a certification hearing. While the identity of each class member is not necessary at this stage of the proceedings, the definition of the class is necessary.

ADEQUACY OF REPRESENTATION
La.C.C.P. art. 592 provides for representation:
One or more members of a class, who will fairly insure the adequate representation of all members, may sue or be sued in a class action on behalf of all members.
Because of the trial court's restriction of discovery to only the representative plaintiffs, defendants were unable to ascertain the nature of the claims of absent plaintiffs; thus, there is no evidence as to the interests of the absent class members to support plaintiffs' contention of adequate representation.

PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION UNDER STRICT LIABILITY OR UNDER NEGLIGENCE
The proof in Brown was complicated by the assertion that in some claims there is a cause independent of any negligence for which NOPSI can be found liable. The availability of comparative negligence defenses would depend on the actions of each claimant under the particular circumstances of his alleged loss. The court distinguished McCastle, a strict liability case in which there was no hint that defendants could assert an independent causation defense.
Plaintiffs in brief say "The basic duty that defendants are alleged to have breached to the class plaintiffs are set forth in Articles 667 through 669 of the Louisiana Civil Code." Since plaintiffs have asserted a La.C.C. arts. 667-669 claim herein, this concern in the Brown opinion is absent. However, plaintiffs seem to rely on La.C.C. art. 2324, which describes solidary liability for negligent tortfeasors in order to escape the killing effect of O'Neal v. Southern Carbon Co., 216 La. 96, *418 43 So.2d 230 (1949) which requires in a strict liability claim under arts. 667-668 that plaintiff must establish that their damage and inconvenience resulted from the operations of a particular defendant.
None of the cases cited by plaintiffs in support of their "synergy" theory were nuisance cases. An examination of Louisiana authorities for the last fifty years finds "synergy" applied in drug interaction, interaction of smoking and asbestos exposure in employee cases, in sex abuse cases to interrupt prescription, and in products liability cases. I find no jurisprudential authority supporting a finding of synergy of different neighbors in a strict liability claim under articles 667-668. Plaintiffs claim in brief that synergism "is often the result of such processes." However, plaintiffs introduced no evidence that synergism takes place among these four plants, and plaintiffs have not shown that these four plants, and not the many others in the same area in St. Bernard are the sole malefactors in this alleged synergistic scheme.
Thus, the class is inappropriate whichever theory of liability is accepted: if the claim is under strict liability, it avoids the comparative negligence defeat of commonality, but fails since there is no evidence showing common damage to each class member from each particular defendant. If the claim is, the class is vulnerable since there was no evidence of any negligent conduct: in fact, the parties have agreed that the defendants met or exceeded all published emission standards, whether state or federal.

BURDEN OF PROOF
This Court held that "the burden of proof as to the criteria [for certification of a class action] is on the plaintiffs." Spitzfaden v. Dow Corning Corp., 619 So.2d 795, 798 (La. App. 4 Cir.1993), writs denied 624 So.2d 1236, 1237 (La.1993).
Plaintiffs contend that this burden is satisfied when they provide affidavits from their experts concerning the issues of commonality. For this proposition, they cite the Ellis case; however, in footnote # 1, the Ellis court recognized that the class action certification proceedings were completed BEFORE the effective date of the Louisiana Code of Evidence. La.C.E. art. 1101(A)(1) makes the code applicable to determination of questions of fact in "all contradictory judicial proceedings." La.C.E. art. 801(C) defines inadmissible hearsay as "a statement [a written assertion, according to La.C.E. 801(A) ] other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." (Emphasis added.) The affidavits on which plaintiffs' base their claim of pollution are thus inadmissible.
In DeGravelles v. Bernard, 94-0137 (La. 1/18/94), 629 So.2d 1187, the Louisiana supreme court granted writs and held that where a hearing involved questions of fact, sought to be established by affidavits, which are either dispositive of or central to the disposition of the case, those affidavits are not admissible.
The problem with the affidavits submitted in support of the class action below is further compounded because they differ in significant ways from deposition testimony given at an earlier time by the affiants. For example, in his December 1992 deposition, plaintiff's expert Dr. Reible testified that if the combined effect of emissions from the four plants and the other emission sources in the Parish did not exceed national air quality standards (NAAQS), there could be no harmful effects associated with the emissions. His affidavit confirms a consultant's conclusion concerning the relationship between the consultant's air dispersion model and community complaints as well as the chemical and physical effects of those pollutants into the atmosphere (effects he previously testified could not occur if NAAQS were met.) CCI's representative in deposition in December 1992 testified that CCI had neither the expertise nor qualification to testify concerning health effects of air emissions, other than by relying on the NAAQS. The January 1993 CCI report asserts to the contrary that compliance with the standards does not guarantee that nuisances or hazards will be created.
The expert affidavits are also suspect since the trial court did not undertake the screening process required by Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 *419 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and Clement v. Griffin, 91-1664 (La.App. 4 Cir. 3/3/94), 634 So.2d 412, 426, writs denied, 94-0717, 94-0777, 94-0789, 94-0791, 94-0799 and 94-0800 (La. 4/20/94), 637 So.2d 478, 479.
The evidence submitted to support the class action is hearsay, incompetent and fails to sustain the plaintiffs' burden of proof.

CONCLUSION
Based on my review of the facts of record and applicable jurisprudence, I would find that the class action should be dismissed on plaintiff's failure to sustain its burden of proving by competent evidence that the class possesses commonality, is identifiable, and will provide a fair, representative and superior means of resolving the named plaintiffs' claims and those of absent plaintiffs. Therefore, I concur in the majority's affirmance of the trial court's judgment denying certification of a class action against ChemCat and Calciner, and dissent from the majority's amendment of the trial court's judgment certifying a class action against Mobil and Murphy.
NOTES
[1] The class representatives as of the filing of this appeal are: Kenneth Ford; Gilbert V. Andry; William Fernandez; James Licciardi, Sr.; James Licciardi, Jr.; Burgess B. Greer, Jr.; Wayne Wescott; Charles W. Borchers III; Myrna Fiorella; Joyce Clarkin; Felix Giorlando, Sr.; Felix Giorlando, Jr.; Gina Smallwood; Gail Brown; Carol Bodden; Eloise Williams; Carrie Lewis; Joseph Lewis, Jr.; Anna Mae Ruffin; Caesar Ruffin; Frederick Thorne, Jr.; Armond Duvio d/b/a Putter's Palace Amusements; Maurice Gilly; Brenda Ciuffi; Clarence Galjour; Bettie Hebert.
[2] The suit originally named six class representatives, all residents of St. Bernard Parish. Six supplemental and amending petitions were filed in order to name additional plaintiffs, including plaintiffs residing in Orleans Parish, and to withdraw various plaintiffs' names as class representatives.
[3] Paragraph 23 also alleges that defendants are liable for "[a]ny and all acts of negligence which may be proven."
[4] Although the petition was amended several times, plaintiffs have maintained the alternative nature of their allegations, i.e., that defendants' "individual and/or combined activities" have injured them.
[5] There are twenty-six plaintiffs named as class representatives. Plaintiffs' counsel offered a computer printout of clients who, as of December 16, 1993, had signed contracts to be represented in this matter, either as a member of the class or by joinder if a class is not certified. Affidavits provided by plaintiffs established that the number of clients listed on that printout total 4,039.
[6] The plaintiffs in McCastle, like plaintiffs herein, asserted claims under Civil Code articles 667-669 and 2315. 456 So.2d at 618.
[7] This proposed class definition was set forth in plaintiffs' response to questions posed by this court when the case was reargued before a fivejudge panel. This essentially is the same class definition suggested by plaintiffs to the trial court in their memorandum in support of class certification. The geographic boundaries suggested by plaintiffs in this proposed class definition are based upon the perimeter of the area surrounding the defendants' facilities formed by connecting the outermost points on the geo-coded map of complaints introduced as Plaintiffs' Exhibit 9.
[1] Williams v. State, 350 So.2d 131 (La.1977), discussed infra.