703 So.2d 542 (1997)
Kenneth E. FORD, et al.
v.
MURPHY OIL U.S.A., INC., et al.
Nos. 96-C-2913, 96-C-2917 and 96-C-2929.
Supreme Court of Louisiana.
September 9, 1997.
Charles S. McCowan, Jr., James P. Dore, Glenn M. Farnet, Baton Rouge, Donald F. Woods, Jr., Los Angeles, CA, Dewey Ballantine, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, for Applicant in No. 96-C-2913.
George A. Frilot, III, James F. Shuey, Kenneth A. Mayeaux, Frilot, Partridge, Kohnce & Clements, New Orleans, for Applicant in No. 96-C-2917.
*543 Nicholas F. Noriea, Jr., Gainsburgh, Benjamin, David, Meunier, Noriea & Warshauer; New Orleans, Gilbert V. Andry, III, Andry & Andry; New Orleans, Sidney D. Torres, III, Roberta L. Burns, Gerald E. Meunier, New Orleans, for Applicant in No. 96-C-2929.
George A. Frilot, James F. Shuey, Kenneth A. Mayeaux, Frilot, Partridge, Kohnce & Clements; New Orleans, Nicholas F. Noriea, Jr., Gainsburgh, Benjamin, David, Meunier, Noriea & Warshauer; New Orleans, Gilbert V. Andry, III, Andry & Andry; New Orleans, Julie A. Scheib, Sessions & Fishman; New Orleans, Mark S. Embree, Robert E. Couhig, Sam A. LeBlanc, III, Adams & Reese; New Orleans, Walter C. Thompson, Jr., Mark P. Seyler, Barkley & Thompson; New Orleans, Sidney D. Torres, III, Donald F. Woods, Jr., Los Angeles, CA, Hal C. Welch, New Orleans, Lemle & Kelleher; New Orleans, Roberta L. Burns, Gerald E. Meunier, Valeria M. Sercovich, New Orleans, for Respondent in No. 96-C-2913.
Charles S. McCowan, Jr., James P. Dore, Glenn M. Farnet, Baton Rouge, Donald F. Woods, Jr., Los Angeles, CA, Dewey Ballantine, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman; Baton Rouge, Nicholas F. Noriea, Jr., Gainsburgh, Benjamin, David, Meunier, Noriea & Warshauer; New Orleans, Gilbert V. Andry, III, Andry & Andry; New Orleans, Julie A. Sheib, Sessions & Fishman; New Orleans, Mark S. Embree, Robert E. Couhig, Sam A. LeBlanc, III, Adams & Reese; New Orleans, Walter C. Thompson, Mark P. Seyler, Barkley & Thompson; New Orleans, Sidney D. Torres, III, Donald F. Woods, Jr., Los Angeles, CA, Hal C. Welch, New Orleans, Lemle & Kelleher; New Orleans, Roberta L. Burns, Gerald E. Meunier, Valeria M. Sercovich, New Orleans, for Respondent in No. 96-C-2917.
George A. Frilot, James F. Shuey, Kenneth A. Mayeaux, Frilot, Partridge, Kohnce & Clements; New Orleans, Charles S. McCowan, Jr., James P. Dore, Glenn M. Farnet, Baton Rouge, Donald F. Woods, Jr., Los Angeles, CA, Dewey Ballantine, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman; Baton Rouge, Julie A. Scheib, Sessions & Fishman; New Orleans, Mark S. Embree, Robert E. Couhig, Jr., Sam A. LeBlanc, III, Adams & Reese; New Orleans, Walter C. Thompson, Jr., Mark P. Seyler, Barkley & Thompson; New Orleans, Donald F. Woods, Jr., Los Angeles, CA, Hal C. Welch, New Orleans, Lemle & Kelleher; New Orleans, Valeria M. Sercovich, New Orleans, Alan J. Berteau, Baton Rouge, for Respondent in No. 96-C-2929.
Rachalle D. Dick, Amanda A. Giering, Baton Rouge, for Amicus Curiae Louisiana Chemical Association and Louisiana Association of Business and Industry.
VICTORY, Justice.
We granted writs to determine whether the lower courts were correct in certifying this action as a class action. After reviewing the record, we hold that this action is inappropriate for class certification.

FACTS AND PROCEDURAL HISTORY
On June 25, 1990, six class representatives living in St. Bernard and Orleans Parishes filed a "Class Action Petition for Damages" in the 34th Judicial District Court, St. Bernard Parish, against four petrochemical plants located along the Mississippi River from Chalmette to Meraux, Louisiana. The petition was amended several times and now includes 26 class representatives,[1] who have filed suit on behalf of thousands of residents who live near the four petrochemical plants and who claim physical and property damages as a result of the continuous emissions, combined and individual, of the defendant companies since 1989. Plaintiffs allege in their "Third Supplemental and Amending Class Action Petition for Damages" as follows:
The individual and/or combined activities of the defendants render them liable, jointly and in solido, unto petitioners for damages prayed for herein, each having caused or contributed and each continuing to cause or contribute to a condition or situation which significantly and materially affected and/or affects petitioners' legally protectable rights by virtue of a synergistic accumulation or combination of releases, *544 emissions, disbursements, placement, seepage, drainage, migration or otherwise non-consensual placing of pollutants on the exclusive properties or persons of the petitioners, which causes and continue to cause petitioners' loss, injury and damage, including but not limited to the following items of damage.
Plaintiffs also complain of noise, odor, heat, dust and flare releases from the individual defendants resulting in personal, property and business losses.
The named defendants are Murphy Oil USA, Inc., Mobil Oil Corporation, ChemCat Corporation and Calciner Industries, Inc. The Mobil facility, located in Chalmette, is a fully integrated oil refinery that Mobil has operated since December, 1988, when Mobil purchased the facility from Tenneco. The Murphy facility, located in Meraux, is also a fully integrated oil refinery in operation since 1961. ChemCat, a smaller facility which is no longer in operation, regenerated spent catalyst. Calciner is a smaller facility which produces calcined coke by using a rotary kiln to heat green coke to remove moisture and impurities. The emissions of each defendant are different and the four companies are completely independent of each other. Although the emissions of the defendant companies have met all standards of the Louisiana Department of Environmental Quality and of the federal Clean Air Act, plaintiffs claim that the release of these emissions constitutes a nuisance under Louisiana Civil Code articles 667-669 and is negligent under 2315 and 2315.1.
In April of 1994, the trial court entered a judgment certifying a class action against Murphy and Mobil, but not ChemCat and Calciner. The trial court also ruled that the class would be divided into two subclasses with the geographic perimeters to be determined at a later date. On August 28, 1996, the Fourth Circuit affirmed, but held that the trial court erred in failing to define the geographic perimeters of the class. Ford v. Murphy Oil USA, 94-1218 (La.App. 4th Cir. 8/28/96), 681 So.2d 401. The Fourth Circuit defined the class as follows:
Those residents, property owners, and business owners in the St. Bernard Parish communities of Arabi, Chalmette, and Meraux, extending eastward to the Violet Canal, and that portion of Algiers directly across the Mississippi River bounded to the west by Holiday Drive, to the south by General deGaulle, and to the east by the Algiers Canal, who allege that they have sustained personal injury or property damage caused by the emission of hazardous, toxic, corrosive, or noxious odors, fumes, gases, or particulate matter as a result of the violation of Articles 667-669, 2315 and 2315.1 of the Louisiana Civil Code by Murphy Oil USA, Inc. and Mobil Oil Corporation.
Id. 681 So.2d at 409. We granted writs filed by plaintiffs and by Mobil and Murphy to determine whether the lower courts were correct in certifying the class against Mobil and Murphy and denying certification against ChemCat and Calciner. Ford v. Murphy Oil USA, Inc., 96-2913, 96-2917, 96-2929 (La.2/7/97), 688 So.2d 483.

DISCUSSION
The class action is a nontraditional litigation procedure permitting a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common or general interest to persons so numerous as to make it impracticable to bring them all before the court. See Herbert B. Newberg & Alba Conte, 1 Newberg on Class Actions, § 1.01, p. 1-2, 1-3 (3d ed.1992). The purpose and intent of class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to the representatives who bring the action, but to all others who are "similarly situated," provided they are given adequate notice of the pending class action and do not timely exercise the option of exclusion from the class action.
The class action originated in eighteenth century English equity courts, as an exception to the rule that joinder of all interested parties was necessary to obtain complete justice. In the United States, the class action procedure was available only in equity until 1938 when the Federal Rules of Civil Procedure *545 were enacted. Original Rule 23[2] recognized the "true" class action, which concluded the rights of all class members, whether named in the suit or not; the "hybrid" class action, in which class members made separate claims against a common fund or property; and the "spurious" class action, in which the members of the class made separate claims involving common questions of law or fact. The "true" class action was described by original Rule 23(a) as an action in which "the right to enforcement for ... the class was ... joint, or common, or secondary in the sense that the owner of primary right refuses to enforce it and class member thus becomes entitled to enforce it." As opposed to judgments in "true" class actions, judgments in "spurious" and "hybrid" class actions did not determine the rights of absent class members.
In 1961, Louisiana enacted Articles 591-597 of the Code of Civil Procedure, modeled after original Federal Rule 23. However, the redactors of the Code of Civil Procedure rejected the hybrid and spurious class action models, authorizing only "true" class actions. La. C.C.P. art. 591, Comment (c).[3] In 1966, Federal Rule 23 was amended, eliminating the three categories of class actions.[4] Accordingly, the statutes governing class actions in Louisiana originated from the federal class action statute as it existed between 1938 and 1966, before the explosion of "mass tort" class actions, and with the express legislative intent to recognize only "true" class actions under the original federal rule because of the availability of Louisiana's liberal joinder and intervention rules.[5]
Because a "mass tort" class action would typically fall under the definition of a "spurious" class action, now superseded by Rule 23(b)(3), see Amchem Products, Inc. v. Windsor, ___ U.S. ___, ___, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997), it is problematic to apply Articles 591-597 in mass tort cases.
Article 591 provides:
A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is:
(1) Common to all members of the class; or
(2) Secondary, in the sense that the owner of a primary right refuses to enforce it, and a member of the class thereby becomes entitled to enforce the right.
La. C.C.P. art. 591.[6] The Official Revision Comments note that the word "joint" in original *546 Rule 23 was eliminated from article 591(1) because the phrase "common to all members of the class" includes the Louisiana joint right or obligation. La. C.C.P. art. 591, Comment (b)[7]. At issue in this case is whether "the character of the right sought to be enforced for ... the members of the class is ... common to all members of the class."
Early Louisiana class action jurisprudence recognized the stringent common interest requirements of the original Rule 23 "true" class action, although the tests employed by the circuits differed.[8] We first interpreted this provision in Stevens v. Board of Trustees of Police Pension Fund, 309 So.2d 144 (La.1975). In Stevens, we held that the fact that different recoveries are sought, based upon the same factual transaction and same legal relationship, was not intended to defeat a class action. 309 So.2d at 149. However, we explained that because "hybrid and spurious class actions generally required no more connexity between the rights of the representative and of the absent members than the existence of a common question of law or fact, whereas the true class action required a stronger relationship between the claims," when the legislature rejected the hybrid and spurious class actions, they "intended that there be a relationship between the claims greater than simply that of sharing a common question of law or fact." Id. at 150. In discussing the term "common character of the right sought to be enforced," we looked to the federal rules and noted that those rules were revised in 1966 because of the "difficulty of characterization required by this term of indefinite and imprecise meaning" and to describe "in more practical terms the occasions for maintaining class actions." Id.
We thus adopted what we then called the "discretionary grant" given to trial judges in amended Federal Rule 23(b) as guidelines to be used by Louisiana courts in determining whether to allow a class action. Id. Federal Rule 23(b) provides:
An action may be maintained as a class action if the prerequisites of subdivision (a)[9] are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests *547 of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
Id. at 151; F.R.C.P. 23(b).[10] Although an action may be maintained as a class action in federal court when all the requirements of 23(a) are met and just one of the requirements of 23(b) are met, in Stevens we directed Louisiana courts to consider every requirement of 23(b) in determining whether to allow a class action. In addition, we summarized the intertwined values of effectuating substantive law, judicial efficiency, and individual fairness involved in allowing a class action as follows:
In determining how the legislature intended the courts to define and apply the concept of allowing a class action to enforce rights with a common character, we are mindful of the basic goals or aims of any procedural device: to implement the substantive law, and to implement that law in a manner which will provide maximum fairness to all parties with a minimum expenditure of judicial effort. Implicit, then, in decision that rights are of a common character is a consideration of the extent to which a clear legislative policy might be thwarted, or hampered in its implementation, by the lack of availability of the class action device.
But this does not end the inquiry. Fairness to the parties demands at the least that the relationship between the claims of members of the class should be examined to determine whether it would be unfair to the members of the class, or to the party opposing the class, to permit separate adjudication of the claims. In determining whether it would be unfair to require separate adjudications, for instance, the courts should consider the precedential value of the first decision, as well as the extent of injustice that will be produced by inconsistent judgments in separate actions. Another factor to be considered, for example, is the size of the claims of the absent members of the class, for the greater the claim, the greater the interest of its owner in prosecuting it in a separate action.
Id. at 151.
In sum, in Stevens we substantially liberalized the availability of class actions under Louisiana law by giving judges wide discretion in determining whether to allow class actions using the factors listed in Rule 23(b) *548 and the "fairness" factors enumerated in Stevens, rather than following the legislative intent of allowing only "true" class actions.
Since Stevens, we have applied these factors in three subsequent cases to determine whether "the character of the right sought to be enforced ... is common to all members of the class ..." under La. C.C.P. art 591. In Williams v. State, we allowed a class action filed by 600 prisoners against the state for food poisoning they suffered after eating a lunch at a state prison, but held that, for class certification, "[t]he evidence as to the tort itself must be identical for each claim." 350 So.2d 131, 135 (La.1977). In State ex rel. Guste v. General Motors Corp., we allowed a class action by 1,400 car buyers against GMC for deceptive trade practices holding that "[t]he mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship does not defeat a class action." 370 So.2d 477, 489 (La.1978) (on rehearing). Finally, in McCastle v. Rollins Environmental Services of Louisiana, Inc., relied on by plaintiffs and the majority in the court of appeal in this case, we allowed a class action of 4000 residents against the operator of a hazardous waste facility and the supplier of the hazardous waste alleging that the fumes and odors from the facility on certain dates caused them physical injuries because "there exists as to the totality of issues a common nucleus of operative facts...." 456 So.2d 612, 620 (La.1984).
After reviewing the record in this case, we determine that the court of appeal erred in affirming certification of the class based on McCastle, supra. Of particular relevance to the case at bar is our discussion in McCastle of whether common questions predominated over individual issues. In McCastle, we held:
Offering the same facts, all class members will strive to establish that the hazardous waste materials placed in the soil by the defendants emitted gases, fumes and odors capable of causing harm and unreasonable inconvenience to persons in the neighborhood. Each class member stands in an identical position with respect to the following issues: (1) whether hazardous waste materials of the quality and quantity capable of causing the damage and unreasonable inconvenience alleged were present at the land farm on the pertinent dates, (2) whether the land farm emitted harmful and malodorous gases on the dates alleged, (3) whether the probable dispersion patterns of the gases and odors emitted include the areas within which the residences of the members of the class are located.
Id. at 619-620. We further held that the potential individual issues of whether each member of the class was harmed or inconvenienced on the same dates or sustained the same amount of injury did not defeat the class action because "on all of the dates in question the land farm received similar hazardous waste from the same source and that the land farming operations were conducted consistently." Id. at 620. "Consequently, there exists as to the totality of issues a common nucleus of operative facts such as would justify allowing the class action to proceed." Id. It is important to point out that in McCastle, the plaintiffs had already been granted an injunction enjoining the defendant from emitting nauseous odors, thus indicating the court's belief that the plaintiffs would likely succeed on the merits. 415 So.2d 515 (La.App. 1st Cir.1982). Furthermore, unlike the instant case where plaintiffs allege only continuous, generally nonspecific tortious activity over a period of approximately four years, the plaintiffs in McCastle alleged 129 discrete acts over an 11-month period that caused their specific and limited injuries. In addition, in McCastle we pointed out that there was only one source of odors and fumes, whereas here, there are possibly four sources of different types of emissions.
The court of appeal made the following erroneous crucial finding based on McCastle that "[o]ffering the same facts, all class members will attempt to establish that the activities of Mobil and Murphy emitted hazardous, toxic, corrosive, or noxious odors, fumes, gases or particulate matter that caused them damage. The issue of these defendants duty predominates over individual questions." 681 So.2d at 407. However, far from offering the same facts, each class member will necessarily *549 have to offer different facts to establish that certain defendants' emissions, either individually or in combination, caused them specific damages on yet unspecified dates (which dates may run into the hundreds or even thousands). The causation issue is even more complicated considering the widely divergent types of personal, property and business damages claimed and considering each plaintiffs' unique habits, exposures, length of exposures, medications, medical conditions, employment, and location of residence or business. In addition, each plaintiff will have to prove that the specific harm he suffered surpassed the level of inconvenience that is tolerated under C.C. art 668.[11] By the very nature of the claims that have been made, the length of time involved, and the vast geographical area in which the class members live, the degree of inconvenience or damage suffered will vary greatly as to the individual plaintiffs. Lastly, the mere finding of "defendants duty" not to pollute will do little to advance the issues in this case. There appear to be far too many individual liability issues which could not be tried separately, as that is prohibited by article 593.1(C)(1). As aptly stated by Judge Schott in his dissent, "[o]ne plaintiff cannot prove individual causation and individual damage based on the exposure of another plaintiff to a particular emission." 681 So.2d at 411. The individualistic causation and liability issues are further magnified in this case by the claim that four different sources of emissions are involved. This case simply strays too far from the "true" class action that the Legislature intended to allow and we refuse to extend McCastle.
Finally, we are not swayed by the "fairness" factors listed in Stevens to certify this class. There is no indication that the legislative policy underlying the nuisance and negligence civil code articles would be thwarted by disallowing this extremely broad class action. In addition, decertification will not keep these plaintiffs out of court as individual actions, consolidated actions, or perhaps a more limited class action are still available.
Our holding is consistent with the recent United States Supreme Court pronouncement on the application of Rule 23(b)(3), which Stevens directs that we consider. Amchem Products, Inc. v. Windsor, supra. In Amchem, the Supreme Court affirmed the Third Circuit's decertification of a nationwide asbestos case brought for settlement purposes because the class failed the "predominance" requirement of Rule 23(b)(3) and the "adequacy" requirement of Rule 23(a)(4). In decertifying the class, the Court noted the following "disparate questions undermining class certification" highlighted by the Third Circuit:
Class members were exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods. Some class members suffer no physical injury or have only asymptomatic pleural changes, while others suffer from lung cancer, disabling asbestos, or from mesothelioma.... Each has a different history of cigarette smoking, a factor that complicates the causation inquiry....
___ U.S. at ___, 117 S.Ct. at 2250 (citing 83 F.3d 610, 626). These factors were highlighted by the Third Circuit "[i]n contrast to mass torts involving a single accident."
The Court did find that "mass tort cases arising from a common cause or disaster may, depending upon the circumstances, satisfy the predominance requirement." Id. The Court opined that although the comments to Rule 23 cautioned that mass tort cases were "ordinarily not appropriate for certification," "the text of the rule does not categorically exclude mass tort cases from class certification." Id.
Thus, it is clear that a mass tort case may meet the requirements of Rule 23(b)(3) if it "aris[es] from a common cause or disaster," but even then, the appropriateness of class *550 certification will depend on the circumstances. That only mass torts "arising from a common cause or disaster" may be appropriate for class certification is in line with our holding today and the underlying reasoning of this court's prior jurisprudence.[12]
Clearly, under Amchem, claims arising from the torts of the individual defendants are not appropriate for class action as there is no "common cause" as to those claims for all class members. Plaintiffs' allegation, if it is a viable cause of action and can be proven, that the four defendants are jointly liable "by virtue of a synergistic accumulation or combination of releases..." theoretically could arise from a common cause. However, as we have seen, the common issue of whether the defendants are emitting substances that do synergistically combine does not predominate over the individual liability issues in this case. Therefore, class certification is inappropriate.
We also determine that this case is inappropriate for certification because the "synergy" theory is a novel and untested theory of law, making it impossible for plaintiffs to prove that the class action procedure is appropriate. Most recently the U.S. Fifth Circuit decertified a nationwide class action of nicotine-addicted persons against various tobacco companies, in part because the plaintiffs' theory was novel and untested. Castano v. American Tobacco Company, 84 F.3d 734 (5th Cir.1996). Analogous to this case, the court noted that the gravamen of the complaint is "the novel and wholly untested theory that the defendants fraudulently failed to inform consumers that nicotine is addictive and manipulated the level of nicotine in cigarettes to sustain their addictive nature." Id. at 737. Similarly, the gravamen of this complaint is that a "synergistic accumulation or combination of releases" caused plaintiffs' damages.
Most importantly for our analysis, the Castano court focused on the "immature" quality of the tort. Immaturity of the tort at issue is a factor to consider under the "superiority" analysis of Rule 23(b)(3)(B)'s factor of "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class." The court held that "at this time, while the tort is immature, the class complaint must be dismissed, as class certification cannot be found to be a superior method of adjudication." Id. at 740-741. The court listed several relevant reasons why that case failed the superiority requirement of 23(b)(3):
In the context of mass tort class actions, certification dramatically affects the stakes for defendants. Class certification magnifies and strengthens the number of unmeritorious claims. Aggregation of claims also makes it more likely that a defendant will be found liable and results in significantly higher damage awards.
In addition to skewing trial outcomes, class certification creates insurmountable pressure on defendants to settle, whereas individual trials would not. The risk of facing an all-or-nothing verdict presents too high a risk, even when the probability of an adverse judgment is low.
Id. at 746 (cites omitted). After noting that "historically, certification of mass tort litigation classes has been disfavored,"[13] the court *551 elaborated that "the traditional concern over the rights of defendants in mass tort class actions is magnified in the instant case" and was specifically concerned "that a mass tort cannot be properly certified without a prior track record of trials from which the district court can draw the information necessary to make the predominance and superiority analysis required by rule 23." Id. at 746-747.
The Castano court emphasized that with immature torts, the court must have experience with a tort in the form of several individual actions before it can certify issues in a way that preserves judicial resources. Id. at 749. A court cannot properly conduct a predominance inquiry without having any experience with that type of case. Id.
Plaintiffs "synergy theory" is novel and untested. Whether a cause of action against more than one defendant can be sustained under C.C. arts. 667-669 has never been decided.[14] Furthermore, it is unclear whether plaintiffs can prove that the emissions of the four defendant companies (or the two remaining defendant companies) indeed do combine "synergistically" to cause damage to their surrounding neighbors. Thus, it is unclear what common issues of law or fact will exist in such a case and thus it is unproven whether trying the case as a class action would be superior to trying the case in several individual or consolidated actions.

DECREE
For the reasons stated herein, the judgment of the court of appeal certifying a class action against Mobil and Murphy is reversed. The judgment of the court of appeal denying certification of a class action against Chem Cat and Calciner is affirmed. Plaintiffs' class action petition is dismissed.
REVERSED IN PART; AFFIRMED IN PART.
LEMMON, J., not on panel, recused. Rule IV, Part 2, § 3.
CALOGERO, C.J., concurs and assigns reasons.
KIMBALL, J., concurs in the opinion but does not believe it necessary to reach the issue of whether the existence of a novel and untested theory necessarily renders a class action inappropriate.
JOHNSON, J., dissents and assigns reasons.
CALOGERO, Chief Justice, concurring.
I agree with the majority that the action before us is ill-suited for certification as a class action. I write separately to emphasize that this Court's decision in McCastle v. Rollins Environmental Services of Louisiana, 456 So.2d 612 (La.1984), is still good law. As recognized by the majority, a mass tort case may well be appropriate for certification as a class action if it arises from a common cause or disaster, as was the case in McCastle, which involved plaintiffs' complaints about discrete environmental emissions from a single defendant in a single geographical area under traditional tort theories. In the case before us, we do nothing more than decline to extend McCastle to the unique facts before us.
For the reasons given above, I respectfully concur.
JOHNSON, Justice, dissenting.
I respectfully dissent. Plaintiffs filed suit against Mobil Oil, Murphy Oil, ChemCat Corp. and Calciner Industries for property damages and personal injuries allegedly *552 caused by various noxious emissions from these four plants in St. Bernard Parish. There probably would be further hearings needed to properly define the class, but I believe that this case should be able to proceed as a class action. Without adequate discovery, this court has concluded that there is no commonality between the emissions, and the injuries plaintiffs complain of.
NOTES
[1] However, only 22 class representatives were included in the motion for class certification.
[2] Original Rule 23 authorized representative suits when the right to enforcement for or against the class was:

(a) joint, or common, or secondary in the sense that owner of primary right refuses to enforce it and class member thus becomes entitled to enforce it;
(b) several, and the object of action is adjudication of claims which affect specific property involved in action;
(c) several, and there is common question of law or fact affecting the several rights and a common relief is sought.
[3] The Official Revision Comments indicate that while hybrid and spurious class action procedures were permissive joinder devices necessary so as not to deprive the federal courts of diversity jurisdiction, this was not necessary in Louisiana, apparently because diversity was not required and because of Louisiana's liberal permissive joinder and intervention policy. Thus, only the true class action would be recognized in Louisiana.
[4] The major problems with original Rule 23 were the conceptual sloppiness of the rule's tripartite distinction, a dissatisfaction with the fact that the binding effect of a class action depended on elusive jural relationships and not on more practical concerns better suited to a determination of whether a class action should be maintained, the uncertainty as to the effect that a judgment rendered in a class action might have on unnamed class members, and the rule's failure to require notice class members in order to satisfy due process requirements. Louisiana's Class Action: Judge-Made Law in a Mixed Civil And Common-Law Jurisdiction, 61 Tul. L.Rev. 1205, 1216 (1987).
[5] In fact, in 1997 the Legislature passed House Bill 1984, amending La. C.C.P. articles 591-594, 596 and 611, enacting articles 612-617, and repealing article 593.1. These articles more closely track the language of Federal Rule of Civil Procedure 23.
[6] Another prerequisite to class certification is that "[o]ne or more members of a class, who will fairly insure the adequate representation of all members, may sue or be sued in a class action on behalf of all members." La. C.C.P. art. 592. We do not reach the issue of whether this requirement has been met.
[7] The comments also note that "[t]he only similarity between the joint obligation of AngloAmerican law and the joint obligation of Louisiana (the conjoint obligation of the civil law) is the name. See Preliminary Statement to Book I, Title III, Chapter 1." La. C.C.P. art. 591, Comment (b).
[8] See Vizier v. Howard, 165 So.2d 655 (La.App. 1st Cir.1964) (holding that for a class action to be maintained, all class members must have a common and undivided interest in the property or matter involved); Verdin v. Thomas, 191 So.2d 646 (La.App. 1st Cir.1966) (allowing a class action by hundreds of heirs of common ancestors seeking to establish ownership of certain property through their common ancestors); State ex rel. Trice v. Barnett, 194 So.2d 452 (La.App. 1st Cir. 1966), writ refused, 250 La. 259, 195 So.2d 143 (La.1967) (disallowing a class action on behalf of LSU students attacking regulations concerning on-campus automobile use because the individual plaintiffs' concerns predominated over those of the purported class and because of the availability of Louisiana's liberal joinder provisions and the fact that a class action would conclude the rights of all members of the class who did not opt out); Caswell v. Reserve National Insurance Co., 234 So.2d 250 (La.App. 4th Cir.), writ refused, 256 La. 364, 236 So.2d 499 (La.1970) (disallowing a class action on behalf of policy holders with similar claims based on substantially similar facts, finding that the only question common to the class members was a question of law).
[9] Federal Rule 23(a) provides:

Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
These are known as the "numerosity," "commonality," "typicality," and "adequacy" requirements.
[10] FRCP 23(b)(1)(A) "takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against down river owners)." Amchem Products, Inc., ___ U.S. ___, ___, 117 S.Ct. 2231, 2245 (cites omitted). Rule 23(b)(1)(B) "includes for example, `limited fund' cases, instances in which numerous persons make claims against a fund insufficient to satisfy all claims." Id. (cites omitted). "Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of class actions under Rule 23(b)(2). Id. (cites omitted). Rule 23(b)(3) "added to the complex-litigation arsenal class actions for damages designed to secure judgments binding all class members save those who affirmatively elected to be excluded." Id. (cites omitted). "Rule 23(b)(3) `opt out' class action superseded the former `spurious' class action, so characterized because it generally functioned as a permissive joinder (`opt in') device." Id. (cites omitted).
[11] Under articles 667-669, a factual determination must be made as to the nature and extent of the inconvenience that each plaintiff claims. This is a substantive element of liability, not merely an issue of quantum of damages. If a defendant has caused his neighbor mere inconvenience, he is not liable. A case under articles 667-669 is distinguishable from an ordinary negligence or strict liability case in which varying degrees of damages may not defeat a class action.
[12] As in McCastle, a "common cause" does not necessarily have to be a single incident or disaster.
[13] See Valentino v. Carter-Wallace, 97 F.3d 1227 (9th Cir.1996) (decertifying multi state products liability action against manufacturers of epilepsy drug); Andrews v. American Telephone & Telegraph Co., 95 F.3d 1014 (11th Cir.1996) (decertifying class action against "900" telephone number services); Georgine v. Amchem Products, Inc., 83 F.3d 610 (3d Cir.1996) (decertifying asbestos class action); In re American Medical Systems, Inc., 75 F.3d 1069 (6th Cir.1996) (decertifying nationwide penile implant case); Rhone-Poulenc Rorer Inc., 51 F.3d 1293 (7th Cir.1995) (decertifying class action filed by hemophiliacs who had contracted AIDS against manufacturers of anihemophiliac factor concentrate); In re Joint E. & S. Dist. Asbestos Litig., 14 F.3d 726 (2d Cir.1993) (vacating limited fund class action); In re Bendectin Prod. Liability Litig., 749 F.2d 300 (6th Cir.1984) (granting mandamus reversing class certification); Dalkon Shield IUD Prods. Liability Litig., 693 F.2d 847 (9th Cir.1982), cert. denied, 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983) (decertifying class action); Harding v. Tambrands Inc., 165 F.R.D. 623 (D.Kan.1996) (denying certification of nationwide class of persons alleging toxic shock syndrome); Kurczi v. Eli Lilly & Co., 160 F.R.D. 667 (N.D.Ohio 1995) (denying nationwide class certification); Hurd v. Monsanto Co., 164 F.R.D. 234 (S.D.Ind.1995) (refusing to certify class of persons alleging PCB exposure at one plant); Bethards v. Bard Access Sys., Inc., 1995 WL 75356 (N.D.Ill.1995) (recommending denial of class certification in products liability action regarding catheters); Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258 (S.D.Cal. 1988) (denying class certification in flea and tick spray products liability action); In re Tetracycline Cases, 107 F.R.D. 719 (W.D.Mo.1985); Mertens v. Abbott Laboratories, 99 F.R.D. 38 (D.N.H.1983) (denying certification of class in DES litigation); Ryan v. Eli Lilly & Co., 84 F.R.D. 230 (D.S.C. 1979) (denying certification of class of women who took synthetic estrogen during pregnancy).
[14] In O'Neal v. Southern Carbon Co., 216 La. 96, 43 So.2d 230 (1949), this Court dismissed plaintiffs' complaint because they could not prove that the particular defendants' emissions caused their damage where the evidence showed that there were four other possible sources of emissions.