IzJAMES C. GULOTTA, Judge Pro Tem.
Plaintiffs filed this class action individually and on behalf of a class of commercial airline pilots and flight attendants against Airosol Co., Inc., Sumitomo Chemical America Inc., Glaxo Wellcome Inc., The Wellcome Foundation Limited and McLaughlin Gormley King Company. These companies manufacture, distribute and sell insecticides for use in U.S. commercial aircraft.
The plaintiffs claim they have suffered physical injury, medical expenses, mental anguish, loss of income and fear of future disease as a result of exposure to insecticides used in the “disinsection” of aircraft. Disin-section is the process whereby aircraft are fumigated with insecticides prior to entry into foreign countries[1] and is required pursuant to the Convention on International Civil Aviation Treaty.
Plaintiffs sought class certification and damages from the defendants under theories of negligence, design defect, misrepresentation, breach of warranty, failure to warn and placing an unreasonably dangerous product into the stream of commerce. Michael Var-daman was a resident of Louisiana at the Rtime the suit was filed[2], Teresa Anshus is a resident of Minnesota, and Lynne Grunauer is a resident of Kansas.
*378 Defendant, Glaxo Wellcome, sought to remove the matter to the Federal Court; however, on plaintiffs’ motion to remand, the U.S. District Court Judge remanded the matter to Civil District Court.[3]
In the state trial court defendants filed declinatory, dilatory and peremptory exceptions, claiming lack of subject matter jurisdiction, lack of personal jurisdiction, improper cumulation of actions, non joinder of indispensable parties, improper venue, and vagueness. The trial judge denied the exceptions of non joinder of indispensable parties, personal jurisdiction and venue. He granted defendants’ exception of lack of subject matter jurisdiction with regard to the non-resident plaintiffs, Anshus and Gru-nauer, and dismissed their claims. However, he denied this exception with regard to the Louisiana plaintiff, Michael Vardaman.
Plaintiffs appealing claim (1) the trial judge erred in dismissing their claims for lack of subject matter jurisdiction and (2) in holding that it lacked subject matter jurisdiction to entertain a national class action.
In answers to the appeal, defendants claim the judgment should be modified to include dismissal of all plaintiffs, including the Louisiana resident, LMichael Vardaman, on the grounds of lack of subject matter jurisdiction, improper venue, improper cumulation and improper joinder of parties.
SUBJECT MATTER JURISDICTION
At the outset, we áre here concerned with the threshold issue of subject matter jurisdiction. Article V, Section 16(A) of the Louisiana Constitution provides in pertinent part: “Except as otherwise authorized by this constitution ..., a district court shall have original jurisdiction of all civil and criminal matters.” Article 2 of the Lohisiana Code of Civil Procedure defines jurisdiction over the subject matter as the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted.
In Moore v. Roemer, 567 So.2d 75, 79 (La.1990), the Louisiana Supreme Court stated that the language of La. Const, art. V, sec. 16 makes it clear that a district court is vested with at least concurrent original jurisdiction to adjudicate all civil matters except those matters in which original jurisdiction over a civil matter was otherwise authorized by the Constitution itself in other courts or in other adjudicative tribunals.
In the instant case, plaintiffs couched their claims as a personal injury suit. Generally, this would constitute a civil matter over which the district courts have subject matter jurisdiction because “damage suits of all kinds... have long been the warp and woof of the caseload of the courts.” Magnolia Coal Terminal v. Phillips Oil Co., 576 So.2d 475, 487 (La.1991) (Dennis, J., concurring). Yet the manner in which plaintiffs couch their claims does not necessarily vest jurisdiction in our district courts; rather, the nature of the relief demanded is dispositive. See Central Louisiana Electric Co., Inc. v. Louisiana Public Service Comm’n, 601 So.2d 1388, 1386 (La.1992). This suit arises from damages allegedly suffered by plaintiffs because of defendants’ alleged tortious conduct. The flight attendants and pilots, involved in this suit, allege they have suffered damages as a result of exposure to insecticides manufactured, sold and distributed by defendants. Money damages, such as those sought in this case, are within the original exclusive jurisdiction of Louisiana’s trial courts. See Magnolia Coal Terminal, supra 576 So.2d at 483.
It is clear that under Article V, Section 16(A) of the Louisiana Constitution and Article 2- of the Louisiana Code of Civil Procedure, the Civil District Court has subject *379 matter jurisdiction over the claims brought by the plaintiffs.
Defendants, however, claim because of a treaty between the United States and foreign countries dealing with use of insecticides on aircrafts, the Orleans Parish District Court does not have subject matter jurisdiction and the treaty cuts across the Louisiana’s court’s jurisdiction. •
We disagree. Irrespective of the existence of this treaty, in the absence of a prohibition in the treaty, prohibiting persons from filing suits in cases such as the instant one, we cannot conclude that the treaty, in itself, deprives a Louisiana court of subject matter jurisdiction. Because we find no such prohibition, we conclude the Civil District Court has subject matter jurisdiction.
NATIONAL CLASS ACTION
We now turn to the question whether these claims can serve as the basis for a national class action. Plaintiffs, relying on Phillips Petroleum Company v. Shutts, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), argue that since a class member is a Louisiana resident (Vardaman — the ^Louisiana resident), other class members (the non-resident plaintiffs) may be properly joined although they have no connection to the forum state.
Phillips, a Delaware corporation, which had its principal place of business in Oklahoma, produced or purchased natural gas from leased land located in 11 different states and sold most of the gas in interstate commerce. A large group of royalty owners possessing rights to the leases resided in all 50 States and several foreign countries. These owners brought a class action in a Kansas state court, seeking to recover interest on royalty payments which had been suspended by Phillips. Less than 1,000 of the royalty owners resided in Kansas and one quarter of one percent of the gas leases were on Kansas land. The Kansas Supreme Court concluded that Kansas had personal jurisdiction over all of the non-resident royalty owners despite the owners lack of contact with the state. The U.S. Supreme Court concluded that Kansas did indeed have jurisdiction over the non-resident class members.
The Phillips case is not support for a claim of a national class action in our ease. In Phillips, royalty owners resided in Kansas and gas leases were on Kansas land. Under these circumstances, the Kansas court clearly served as a forum for a class action suit for all members of the class. Our case is distinguishable from Phillips. There exists no connection, in the instant case, to Louisiana courts, other than one of the plaintiffs claims to be a resident of this state. The alleged culprit products are not manufactured or sold in this State; the injury did not occur here; the products were not administered in Louisiana; and, there exists simply no connection to this State in plaintiffs’ cause of action other than that one of them is a Louisiana resident. Moreover, in Phillips, royalty payments to royalty owners on land in Kansas is the common thread that served as the basis for the class action. There is no such common thread 17m the instant case.
Our case is more akin to Ford v. Murphy Oil U.S.A., Inc., 96-2913 (La.9/9/97), 703 So.2d 542. In Ford, area residents brought a class action against operators of four petrochemical plants, claiming physical and property damage as a result of emissions from petrochemical facilities.
The Ford court concluded that “only mass torts arising from a common cause or disaster may be appropriate for elass certification” and held that “the common issue of whether the defendants are emitting substances that do synergistieally combine does not predominate over the individual liability issues in this case. Therefore, class certification is inappropriate.” [4]
In the instant case, as in Ford, more than one type of insecticide was used in different aircraft under different circumstances and plaintiffs allege continuous tortious conduct *380 over an extended period of time. (At least two active ingredients are used in the various insecticides involved in the disinsection process.) [5] Additionally, there is no single incident which lead to the alleged injuries of the pilots and flight attendants. In fact, the plaintiffs assert that they were exposed to different insecticides used in the disinsection process on numerous occasions and that their exposure was chronic and ongoing. Because different manufacturers and distributors of different products | gover extended periods of time in different countries and in different aircraft, using different insecticide application methods, and requiring different avenues of proof, we do not conclude that this cause of action can serve as the basis for a national class action in a Louisiana court.
Accordingly, we hold that no jurisdiction attaches to the non-resident plaintiffs based on a national class action.
PERSONAL JURISDICTION
We are next concerned with whether Louisiana jurisdiction attaches to the Louisiana resident, Michael Vardaman and the defendants. In this connection, we are confronted here with a Louisiana resident who claims injury from products manufactured and/or distributed outside Louisiana by out-of state corporations which are used in aircraft prior to entry into foreign countries, where the inhalation by plaintiff allegedly caused injury in those foreign countries or approaching those countries, and where the allegedly continuing effect of that injury occurs in Louisiana.
The record, in the instant case, does not contain any evidence, by way of deposition, or otherwise, regarding “minimum contacts” of the out-of-state corporations, that might be helpful in the determination of the jurisdiction question in this case. In Michael Vardaman, Teresa Anshus, Lynne Grunauer, et al. v. Airosol Co., Inc., et al., 703 So.2d 1375 (La.App. 4 Cir.1997), which involved the same parties to this litigation, this court had the benefit of an affidavit which set forth that The Wellcome Foundation Limited “is an English Corporation with its principal place of business in London; it has no offices in Louisiana; it owns no real or personal property in Louisiana; it is not and has never been licensed to do business in Louisiana; it has never marketed or sold any product in Louisiana; and, it has never conducted business in Louisiana.” |9In that case, this court went on to say that the “unrebutted affidavit establishes that The Wellcome Foundation Limited has no continuous and systematic contacts with Louisiana at all, thereby defeating plaintiffs’ claim that the trial court had general jurisdiction over it.” Finding that no allegation or showing was made that the products were sold, marketed or delivered in Louisiana, or that the defendant corporation engaged in any act directed to Louisiana, we maintained The Wellcome Foundation Limited’s exception to personal jurisdiction.
Faced with the absence of evidence, either deposition, affidavit or otherwise, the question of whether there exits personal jurisdiction over the remaining defendants, insofar as the Louisiana resident is concerned, requires a remand to the trial court for determination. Accordingly, that part of the trial court judgment dismissing the nonresidents’ claims is affirmed. That part of the judgment permitting Michael Vardaman to pursue his claim against the defendants is reversed and set aside. The matter is remanded solely for the purpose of considering whether there exists personal jurisdiction over the defendants.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

. Although this process was banned in the U.S. in 1979, many countries around the world still require disinsection. There are two methods of disinsection. The first is the aerosol application where the insecticide is sprayed in the cabin while the passengers, flight attendants and pilots are on board. The second is the residual application where the airplane is saturated with the insecticide once every 6-8 weeks and is performed while persons are not on board. The aerosol insecticide is manufactured by defendant Airosol Co., Inc. The active ingredient contained in the aerosol insecticide is manufactured by defendant Sumitomo Chemical America, Inc. The residual insecticide is allegedly manufactured by defendants The Wellcome Foundation Limited and Glaxo Wellcome.

. The record indicates that he now lives in Nevada, however he continues to own property in Louisiana.

. In her Order and Reasons, the Federal District Court Judge found that plaintiffs were not suing a foreign government or airline, but private party defendants who manufacture, distribute and sell pesticides. She added that plaintiff's theory of recovery does not depend on the construction of a treaty but whether, under plaintiffs' various theories of negligence, defendants are civilly liable. Regarding FIFRA (Federal Insecticide, Fungicide & Rodenticide Act), which preempts all state causes of action regarding pesticide labeling, the judge found the defendants' allegations of its applicability are defenses to the state court action and do not confer federal jurisdiction.

. Prior to Ford, the Louisiana circuit courts had more readily found the existence of a class. See Bernard v. Thigpen Construction Company, Inc., et ah, 96-752 (La.App. 5 Cir. 4/29/97), 695 So.2d 518; and, Boudreaux v. State Department of Transportation and Development, et al., 96-0137 (La.App. 1 Cir. 2/14/97), 690 So.2d 114; Thomas v. Schwab & Co., Inc., 95-1405, 95-1279 (La. App. 3 Cir. 9/25/96), 683 So.2d 734, writ denied 97-0009 (La. 1/24/97), 686 So.2d 858.

. The aerosol insecticide is manufactured by Ai-rosol Co., Inc. The active ingredient contained in the aerosol insecticide is manufactured by Sumitomo Chemical America, Inc. The residual insecticide is allegedly manufactured by The Wellcome Foundation Limited and Glaxo Well-come.