726 So.2d 414 (1998)
J.W. BARTLETT, et al., Plaintiffs-Appellants,
v.
BROWNING-FERRIS INDUSTRIES CHEMICAL SERVICES, INC., et al., Defendants-Appellees.
No. 98-341
Court of Appeal of Louisiana, Third Circuit.
December 9, 1998.
Rehearing Denied January 21, 1999.
Leonard Knapp, Jr., Raleigh Newman, and Donald Wayne McKnight, Lake Charles, for J.W. Bartlett.
Michael A. Chernekoff, Robert M. Contois, Jr., Thomas Michael Nosewicz, James Edward Wright, III, New Orleans, and John Richard Pohorelsky, Lake Charles, for Browning-Ferris Ind. Chemical Services.
Before PETERS, SULLIVAN and PICKETT, Judges.
PICKETT, Judge.
The plaintiffs appeal a judgment from the trial court vacating its prior decision and denying the plaintiffs' motion for class action. For the reasons set out below, we affirm.

FACTS
This appeal arises from a suit filed on November 20, 1980, by approximately 400 plaintiffs who live and/or own property near an open-pit hazardous waste disposal facility owned by Browning-Ferris Industries, Chemical Services, Inc. (BFI) and located in the Willow Springs community of Calcasieu Parish, Louisiana. The facts of this case and the prior procedural history are succinctly set forth in Bartlett v. Browning-Ferris Industries, Chemical Services, Inc., 96-218 (La.App. 3 Cir. 11/6/96); 683 So.2d 1319, writ denied, 97-0317 (La.3/27/97); 692 So.2d 394. For the sake of brevity, we will only set forth the facts as they occurred following our previous decision.
On April 12, 1995, the plaintiffs remaining in the suit filed a motion for class action. They amended the motion on March 18, 1996, and again on May 6, 1996. In their amended petitions, the plaintiffs suggested that the class action be separated into subclasses (A, B, C and D) based upon geographical location. The plaintiffs also set the time period for the alleged torts to be from 1968 to the *415 present. Following a hearing on the matter, the trial court issued four separate written reasons for judgment before signing a final judgment on the motion. The first on December 9, 1996, was an interim opinion that limited the class, if the motion were granted, to the current plaintiffs remaining in the suit. A status conference was also set for January 3, 1997, to further discuss the viability of a class action. The second on May 30, 1997, granted the motion for class action as amended and set forth the issues to be decided for the entire class. The third on June 18, 1997, supplemented the previous opinion by adding an issue to be decided for the entire class. Finally, the fourth on January 9, 1998, vacated the granting of the motion for class action and denied the motion pursuant to the Louisiana Supreme Court's decision in Ford v. Murphy Oil U.S.A., Inc., 96-2913, 96-2917, 96-2929 (La.9/9/97); 703 So.2d 542. A judgment to this effect was signed on the same day. The plaintiffs now appeal this judgment.

OPINION
The plaintiffs assert one assignment of error in their appeal, namely: The trial court erred in failing to certify this matter as a class action. The plaintiffs contend that the trial court incorrectly interpreted the Ford opinion in its denial of class certification.
The proper standard of review for certification of a class action is the "abuse of discretion" standard. The trial court has great discretion in deciding whether an action should be certified as a class action. Thomas v. Charles Schwab & Co., Inc., 95-1405 (La.App. 3 Cir. 9/25/96); 683 So.2d 734, writs denied, 97-0009, 96-2579 (La.1/24/97); 686 So.2d 858, 859; Ducote v. City of Alexandria, 95-1197 (La.App. 3 Cir. 3/6/96); 670 So.2d 1378. Thus, absent an abuse of this discretion, the trial court's decision regarding certification of a class cannot be disturbed. Ducote, 670 So.2d 1378.
In the Ford decision, the Louisiana Supreme Court discussed the purpose and intent of the class action procedure:
The class action is a nontraditional litigation procedure permitting a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common or general interest to persons so numerous as to make it impracticable to bring them all before the court. The purpose and intent of class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to the representatives who bring the action, but to all others who are "similarly situated," provided they are given adequate notice of the pending class action and do not timely exercise the option of exclusion from the class action.
Ford, 96-2913, 96-2917, 96-2929 at p. 4; 703 So.2d at 544 (citation omitted).
La.Code Civ.P. art. 591, which sets forth the requirements of a class action, as well as the other class action provisions, was completely rewritten by Acts 1997, No. 839, § 1, effective July 1, 1997. However, the provisions are only applicable to actions filed on or after the effective date. Prior to their revision, La.Code Civ.P. arts. 591 and 592 set forth the requirements for a class action: (1) a class so numerous that joinder is not practical; (2) the joinder of parties who are members of the class and able to provide adequate representation for the absent members; and (3) a common character among the rights of the representative and the absent class members. McCastle v. Rollins Envtl. Servs. of La., Inc., 456 So.2d 612 (La.1984); Thomas, 683 So.2d 734.
In the matter before us, the trial court denied the motion for class action based upon its interpretation of the Ford case. We now consider whether the trial court properly exercised its discretion in denying class certification in this case.
The Ford case involved a class of plaintiffs suing four separate entities claiming that the four sources emanated pollutants that, individually or combined, caused damage to the community over a period of approximately four years. In denying class certification, the supreme court relied on several factors to find that the commonality factor was overcome by individual issues: (1) the essence of the claims would require that each claimant *416 prove which entity and which different emanation, individually or combined, harmed each claimant; (2) the lack of dates that could be used to identify a source; (3) the use of an unproven "synergy" theory of tort; and (4) the "widely divergent types of personal, property and business damages claimed...." Ford, 96-2913, 96-2917, 96-2929 at p. 11; 703 So.2d at 549. While the supreme court concluded that mass torts are typically not "true" class actions, it went on to state "[t]hat only mass torts `arising from a common cause or disaster' may be appropriate for class certification.... " Id. at p. 13; 703 So.2d at 550.
The plaintiffs in the instant case are not claiming multiple sources of emanations. All of the approximately 400 plaintiffs are alleging damages resulting from the emissions of one source, the BFI Willow Springs hazardous waste disposal facility. However, the plaintiffs seek to recover for a variety of damages, including damages for personal injuries, business losses, nuisance or abuse of right, noxious odors and emissions, exposure to hazardous chemicals, fear of cancer and other diseases, and property devaluation. The plaintiffs' theories of recovery include negligence, absolute liability for ultrahazardous activities, La.Civ.Code art. 667,[1] and La.Civ.Code art. 669.[2] The period of time in which the plaintiffs allege the tortious acts is from 1968 to the present, a period of more than thirty years. Although the plaintiffs have proposed to separate the class into four subclasses, the subclasses are based upon geographic location. Within the proposed subclasses, the prospective class representatives pose a variety of claims. The plaintiffs present claims for a diverse assortment of personal, property and business damages. Based upon the unique nature of their claims, the plaintiffs must prove the specific harm they suffered; what tortious conduct, if any, of BFI caused the harm; and at what point during the thirty-year period the harm occurred.
Thus, as the supreme court in Ford, we find, based upon the diversity of the claims and the extended period of time in which the tortious acts occurred, the proposed class lacks the "common character" required of the class representatives and the absent members. The need for individual testimony as to the plaintiffs' claims negates the commonality of their claims. See also Blank v. Sid Richardson Carbon & Gasoline Co., 97-0872 (La.App. 1 Cir. 5/15/98); 712 So.2d 630. Accordingly, we find no abuse of discretion in the trial court's refusal to certify this matter as a class action.

DISPOSITION
For the foregoing reasons, the judgment of the trial court denying the plaintiffs-appellants motion for class certification is hereby affirmed. All costs of this appeal are assessed to the plaintiffs-appellants.
AFFIRMED.
PETERS, J., DISSENTS AND ASSIGNS WRITTEN REASONS.
PETERS, J., dissenting.
I respectfully dissent from the majority opinion and would reverse the trial court's refusal to certify this matter as a class action. The majority concludes that because damages might be different as to each class action participant, certification is not appropriate. The majority's (and the trial court's) reliance on Ford v. Murphy Oil U.S.A., Inc., 96-2913, 96-2917, 96-2929 (La. 9/9/97); 703 So.2d 542, to reach this conclusion is in error.
To read Ford in such a restrictive way is to preclude certification of any class action tort suit. Citing Stevens v. Board of Trustees of Police Pension Fund, 309 So.2d 144 (La.1975), the court in Ford made it clear "that the fact that different recoveries are sought, based upon the same factual transaction and same legal relationship" is not sufficient to defeat a class action. Ford, 703 So.2d at 546.
*417 As pointed out by the majority, the decision in Ford was based on the fact that the plaintiffs were seeking recovery from four separate entities which operated four sources of pollutants. They asserted that these pollutants, individually or combined, caused the damages which were the subject of the class action request. The factors cited as controlling in denying class certification in that case are not present in this litigation.
I find the decision in McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612 (La.1984), to be controlling in this litigation. In McCastle, the supreme court allowed a class action of 4000 people against the operator of a hazardous waste facility and the hazardous waste supplier. The supreme court pointed out in McCastle that "individual questions of quantum do not preclude a class action when predominant liability issues are common to the class." Id. at 620. The court further concluded that "a pragmatic rather than formalistic review of the pleadings and the showing made herein clearly indicates that a class action would be superior to other available adjudicatory methods for effectuating substantive law, judicial efficiency and individual fairness in this case." Id. at 621. Importantly, McCastle was not overruled in Ford; rather, Ford simply refused to extend McCastle to the broad facts before it. I find that this case warrants the same conclusion reached in McCastle.
NOTES
[1] Article 667, at the time this action was filed, provided that "[a]lthough a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
[2] Article 669 provides that "[i]f the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place."